North vs. La Flesh and others.

North, Appellant, vs. La Flesh and others, Respondents.

*February 1 — February 19, 1889.*

LIENS.   *(1) Materials furnished to husband for improvements on wife's land.   (2) Mingling lienable and non-lienable items in one account: Waiver of lien.   (3) Practice: Judgment.   (4) Application of payments.   (5–7) Pleading: Immaterial variances between petition and complaint: Description of premises.*

1. Under sec. 3314, R. S., as amended by ch. 349, Laws of 1885, one who furnishes materials for a house which a husband is building on his wife's land with her knowledge and consent, may have a lien therefor upon such land, although the materials were purchased by the husband upon credit without the authority of his wife.   *Heath v. Solles, ante,* p. 217, followed.
2. The fact that such materials are charged in one continuous account with non-lienable goods sold to the husband, does not impair the right to a lien therefor, where the value of the lienable materials

can easily be ascertained from the account itself without a re-statement thereof.

3. In such a case, in an action against both husband and wife, the plaintiff may have a judgment against the husband for the whole amount of his account, and a further judgment making a portion of that amount a lien upon the land of the wife.

4. In such a case the non-lienable items in the account against the husband included more than $280 which the plaintiff had advanced without charge, for the accommodation of the husband, to pay freights chargeable to the latter. Payments amounting to about $310 had been made on the general account, no application thereof being made by the parties. *Held,* that it was equitable to apply all such payments on the non-lienable items.

5. The fact that the petition for the lien states that the materials were sold to both the husband and the wife, while the complaint and the proofs show that they were sold to the husband alone, is imma-terial. The petition might be amended at any time to correspond with the complaint and proofs.

6. So it is an immaterial variance that the petition states that the ma-terials were used in the erection of a certain building on the land in question, while the complaint alleges that they were used in the erection of a house and barn thereon.

7. In the petition for a lien it is sufficient to describe the building for which the materials were furnished as " a certain building," if the land on which the building stands is accurately described.

APPEAL from the Circuit Court for *Clark* County.

This is an action on an account for goods, wares, and merchandise alleged to have been sold and delivered by the plaintiff to the defendant *Thomas J. La Flesh* between May 18, 1886, and May 23, 1887, to the amount of $1,516.33, and to enforce a lien upon a certain forty-acre lot of land described in the complaint, for $466.80 of such amount. It is alleged in the complaint that the defendant *Elizabeth La Flesh*, who is the wife of the defendant *Thomas*, is the owner of the land upon which the lien is sought to be en-forced, and that a portion of said goods, wares, and mer-chandise, of the value of $466.80, consisted of building ma-terials which were sold to be used, and were used, in the erection of a house and barn upon such land, with the

knowledge and consent of the defendant *Elizabeth*. It is also alleged that the defendant *James H. Reddan* has or claims a lien upon the same land, but which lien, if any, is subsequent to that of the plaintiff.

A petition for a lien was filed, and this action commenced, within the times limited by the statute. R. S. sec. 3318. The sufficiency of the petition is considered in the opinion.

The defendants *La Flesh* answered separately, alleging, amongst other things, that the defendant *Thomas* purchased the materials in question upon his own credit and for his own use and benefit as principal contractor, and erected the building in question as such for his wife, and that the plaintiff is a subcontractor only to the defendant *Thomas*. Also that the defendant *Elizabeth* never authorized her husband or any other person to purchase such materials for her use, and did not know until this action was commenced that her husband had purchased the same on credit; and further, that he agreed to erect the building at his own expense. It is not denied that the buildings were erected with her knowledge and consent.

The cause was tried by the court (a jury having been waived), and thereafter the following findings of fact and conclusions of law were filed:

### FINDINGS OF FACT.

"(1) That during all the time mentioned in the complaint the plaintiff was a hardware merchant and dealer in building materials at Neillsville, Clark county, Wisconsin. (2) That the defendant *Thomas J. La Flesh*, during all the time mentioned in the complaint and for a long time prior thereto, was a dealer in building materials, and a dealer in general merchandise, hardware, lumber, lath, shingles, etc., and had a general store in Clark county, Wisconsin. (3) That on and between the 18th day of May, 1886, and

the 23d day of May, 1887, plaintiff sold and delivered to the defendant, *Thomas J. La Flesh*, on his own personal credit and account, and as such merchant, goods, wares, and merchandise and building materials, and performed labor for him, and paid out and expended moneys for him, at his request, in all to the amount of $1,723.67. (4) That the defendant *Thomas J. La Flesh* paid thereon in money, shingles, groceries, etc., $310.21, leaving a balance due unpaid, on the 24th day of May, 1887, of $1,412.96. (5) That a further payment was made thereon, November 17, 1887, of $299.93, so that, after computing interest at seven per cent., there was due at the date of the trial of this action, March 15, 1888, $1,188.64. (6) That said merchandise was charged to said defendant *Thomas J. La Flesh*, on the books of the plaintiff, in the order in which they were purchased and in one continuous account, without reference to the use thereof in any particular building, and without reference to any rights to or claim for lien. (7) That the defendant *Elizabeth La Flesh* is the wife of *Thomas J. La Flesh*. (8) That the defendant *Thomas J. La Flesh* was not the agent of the defendant *Elizabeth La Flesh*, and had not authority from her to so act, and that he did not act as the agent of the defendant *Elizabeth La Flesh* in any of the matters claimed in this action. (9) That the defendant *Elizabeth La Flesh* was the owner of the lands described in the complaint all the time mentioned therein, and still is the owner thereof. That she constructed a building thereon, and knew that it was being constructed, and consented that it might be constructed thereon. (10) That the defendant *Elizabeth La Flesh* did not know and did not consent that any of the materials used thereon should be or had been purchased on credit, but believed that they were being paid for as used and purchased. (11) That the defendant *James H. Reddan* has a mortgage on said real estate of said *Elizabeth La Flesh*, which was executed to him August 4, 1887,

for $5,000, by said defendant *Elizabeth La Flesh*, which is subsequent to the last date of goods furnished by the plaintiff to the defendant *Thomas J. La Flesh*. (12) That the plaintiff has no lien for any of the materials mentioned in the complaint on the property described in said complaint."

### CONCLUSIONS OF LAW.

"(1) That the plaintiff is entitled to judgment against the defendant *Thomas J. La Flesh* for the sum of $1,188.64, without costs, and without judgment for a lien on the premises described in the complaint, or any part thereof. (2) That the defendants *Elizabeth La Flesh* and *James H. Reddan* are entitled to judgment against the plaintiff *Henry A. North*. Let judgment be entered accordingly, to be signed by the clerk."

Judgment was entered in accordance with the foregoing conclusions of law. The plaintiff appeals from such judgment.

*James O'Neill*, for the appellant.

For the respondents there was a brief by *R. F. Kountz*, attorney, and *R. J. MacBride*, of counsel, and oral argument by *Mr. MacBride*. They contended, *inter alia*, that a contract or agreement more specific than the mere purchase of the materials in the ordinary course of trade is necessary to entitle a party to a lien. It must be shown that the materials were furnished especially to be used in or about the building. *Cotes v. Shorey*, 8 Iowa, 416; *Jones v. Swan*, 21 id. 181; *Stockwell v. Carpenter*, 27 id. 119; *Hill v. Sloan*, 59 Ind. 186; *Miller v. Roseboom*, id. 345; *Hills v. Elliott*, 16 Serg. & R. 56; *Choteau v. Thompson*, 2 Ohio St. 114; *Rogers v. Currier*, 13 Gray, 129; *Hill v. Bishop*, 25 Ill. 349; *Fuller v. Nickerson*, 69 Me. 236; *Mehan v. Thompson*, 71 id. 492; *Weaver v. Sells*, 10 Kan. 609; *Delahay v. Goldie*, 17 id. 265; *Read v. Hull, etc.*, 1 Story, C. C. 250; Phillips on Liens, 212–214, sec. 122. No proper claim for

a lien was filed.   Sec. 3320, R. S., provides that such claim shall state *the name of the person against whom the demand is claimed.*   The claim in this case states that the demand is for materials sold *Elizabeth La Flesh* and *Thomas J. La Flesh,* while the proof is that they were sold to *Thomas J. La Flesh* only.   Not having complied with the statute, the plaintiff gained no lien.   *Kelly v. Laws,* 109 Mass. 395; *Hoffman v. Walton,* 36 Mo. 613; *Hicks v. Murray,* 43 Cal. 515; *Mayes v. Ruffners,* 8 W. Va. 384; *Ward v. Black,* 7 Phila. 342; *McElwee v. Sandford,* 53 How. Pr. 89; *Hays v. Tryon,* 2 Miles (Pa.), 208.   The claim for a lien is also defective in that it does not describe the property, as required by sec. 3320, R. S.   It states merely that the materials were sold to be used and were used in the construction of " a certain building " on certain real estate, but does not state what kind of a building.   In the complaint and on the trial the plaintiff claimed a lien on two buildings, a house and a barn; and the proof is that two buildings were built upon the place.   A description of the property in the claim for a lien was essential.   Phillips on Liens, secs. 176, 379; *Dewey v. Fifield,* 2 Wis. 73; *Dean v. Wheeler,* id. 224; *Short v. Ames,* 22 Weekly Notes of Cases, 354.   The description should be such as would be sufficient in a conveyance. *Brown v. La Crosse C. G. L. & C. Co.* 16 Wis. 555; *Donnelly v. Libby,* 1 Sweeny (N. Y.), 259; *Lindley v. Cross,* 31 Ind. 109; *Runey v. Rea,* 7 Oreg. 130; *Williams v. Porter,* 51 Mo. 442; *Lemly v. La Grange 1. & S. Co.* 65 id. 545.

LYON, J.   That portion of the judgment of the circuit court which denies the plaintiff a lien upon the land of *Mrs. La Flesh,* described in the complaint, rests mainly upon the sixth finding of fact, which is to the effect that all the merchandise sold by the plaintiff to the defendant *Thomas* was charged to the latter on the books of the plaintiff in the order of their purchase in one continuous

account, without reference to the use thereof in any particular building, and without reference to any rights to or claim for a lien. In other words, that, considered in connection with other findings of fact, the transaction was a sale by one merchant to another in the usual course of business, without reference to use in any building or right to a lien.

If such finding of fact be sustained, the case is probably within the rule of *Esslinger v. Huebner*, 22 Wis. 632. In that case Mr. Justice PAINE, commenting upon a certain instruction given to the jury, said: "The plain meaning of this is that, although the lime was sold generally to F. W. Huebner on account, and without any reference to this or any other building, yet if he allowed any portion of it to be used in his wife's building, that would give the lien. This is not the law. How it might be in such a case if the purchaser used the material in his own building it is not necessary to inquire. But it seems clear that one who sells materials to another generally, without reference to any building, cannot follow them with a lien into the buildings of other parties to whom the purchaser may transfer them. And it would make no difference that they were used upon the separate property of the purchaser's wife." Whether the rule of that case is affected by subsequent legislation upon the subject of liens, and, if so, to what extent, need not be here determined, for the reason that we are satisfied that the evidence in the case does not support the sixth finding of fact. The evidence is almost conclusive that the plaintiff sold and delivered the materials in question to the defendant *Thomas* to be used in the erection of the buildings on his wife's land, and that they were in fact so used. Indeed, the only testimony to the contrary is the inference which might, perhaps, under some circumstances, be drawn from the fact that the plaintiff charged such materials in his books in the order of sales, with non-lienable

goods.   But notwithstanding his mode of book-keeping, the testimony of the plaintiff, the contractor who erected the buildings, and the agent or servant of the defendant *Thomas J. La Flesh* to whom a considerable portion of the materials in question was delivered, satisfies our minds that the finding in question is not sustained by the proofs.

The learned circuit judge filed a written opinion, in which he cited the case of *Esslinger v. Huebner*, and also that of *McMaster v. Merrick*, 41 Mich. 505, and seems to have rested the judgment mainly upon these cases.   He quotes from the latter case the following: "It is also settled that one of the plainest cases of waiver is where privileged and unprivileged claims are mingled together in the same dealings, so that the lien is not kept ascertainable without re-stating and charging the accounts."   We are inclined to think that this case led the circuit court into the error of giving undue influence to the fact that the plaintiff did not keep a separate account of the materials sold by him to *Thomas* to be used in the construction of the buildings. For this reason we will briefly review that case: There, as here, lienable and non-lienable items were charged in one general account.   The transactions between the parties in respect to the lienable items related to work upon logs in sawing the same and drying and shipping the lumber, but, unlike this case, a large percentage of the account of the defendant (who did such work and claimed a lien therefor upon the lumber) had been paid by the plaintiff's assignor, and such payments had been applied by the mutual consent of both parties in payment of a general account.   The case is somewhat involved in its facts, and a full statement of it will not be attempted.   It is sufficient to say that the terms of the contract between the parties to the transactions there in question, and the course of dealing between them, rendered it impossible to ascertain from their accounts alone the amount for which the defendants should have a lien on

the lumber. To ascertain such amount it was necessary to investigate those transactions and apportion payments. Of course this could not be done "without restating and charging the accounts." Because it could not, and because the right of the defendant to a lien was a very doubtful one, the Michigan court held that he had waived it. We make no controversy with that court in respect to the doctrine of that case. It is quite probable that we should rule the same way in a similar one. In this case, however, the value of the lienable materials is easily ascertainable from the account itself, and no restatement thereof is necessary for that purpose. The plaintiff is only required to show what materials charged therein were sold and delivered by him to be used in the construction of the buildings in question, and that must be shown in any case. That proof having been made, the amount of lienable charges in the account becomes a mere matter of computation,— not a cause for any restatement or recharging of the account. Hence the rule of the Michigan case has no application to the facts of this case.

On the same general subject counsel for defendants relies upon certain Iowa cases, and gives what purports to be a quotation from *Cotes v. Shorey*, 8 Iowa, 416, to support his position. We fail to find in the report of that case the language quoted. In that case the judgment refusing to enforce a lien was reversed because of the refusal of the trial court to instruct the jury as follows: "If the jury believe from the evidence that the plaintiff sold the materials charged in the account of the plaintiffs to the defendant for the purpose of erecting a house with the same, though the particular house was not then understood by the parties, and if the jury also believe that said materials, or any part thereof, were used by the defendant in erecting the house described in the plaintiffs' petition, the jury will find for the plaintiffs and establish their lien as prayed,"

etc. There is nothing in the case to interfere with the right to a lien here claimed. Moreover, the Iowa statute under which *Cotes v. Shorey* was decided provides that "every person *who by virtue of a contract with the owner* of a piece of land performs work or furnishes material *especially* for any building, and which material is used in the erection or reparation thereof," has a lien, etc. The language of our statute is: "Every person who, as principal contractor, performs any work or labor, or furnishes any materials, in or about the erection, construction, repairs, protection, or removal of any dwelling-house or other building, . . . shall have a lien therefor," etc. There is a material difference in the two statutes, in that the· Iowa statute makes a contract with the owner of the land that the materials are to be furnished especially for the building essential to the lien, while ours merely requires that they shall be furnished therefor, without reference to any contract or agreement except that implied from the sale and delivery of the materials to be so used. Hence, did the Iowa cases hold what it is claimed they do, they would afford us little aid in construing our statute.

It must be held that the sixth finding of fact is unsupported by the testimony; that the materials in question were sold by the plaintiff to be used in the construction of the buildings upon the land described in the complaint; and that, were the defendant *Thomas* the owner of such land, the plaintiff would be entitled to a lien thereon for the value of such materials.

Is he entitled to such lien as against *Mrs. La Flesh*, who was and is the owner of the land? This question is answered affirmatively by the judgment of this court in the case of *Heath v. Solles; ante,* p. 217. It is not denied that *Mrs. La Flesh* had knowledge that her husband was erecting the buildings upon her land, and consented thereto. Under the case last cited, nothing more is required to

charge her land with the lien. That is a stronger case against the lien than is this, for the reason that the husband of Mrs. Solles expressly promised his wife to erect the building at his own expense, which he failed to do. Yet, because she knew that the improvement was being made, and consented thereto, her property was charged with the lien. The present case is ruled by that judgment. Hence it must be held that the plaintiff is entitled to a lien upon the forty acres of land upon which the buildings were erected (the same not being within the limits of an incorporated city or village), although the materials were purchased by the defendant *Thomas* upon credit, without the authority of his wife, who is the owner of the land. The statute upon which that and the present case rests is sec. 3314, R. S., as amended by ch. 349, Laws of 1885. The full discussion of the question under consideration in the opinion in that case, prepared by Mr. Justice TAYLOR, renders it unnecessary to say anything more upon the subject.

The sum for which the lien should be allowed will now be considered. The plaintiff alleged in his petition for a lien that the value of the materials used in the erection of the buildings was $483.56. In his complaint he only claims $466.80. This discrepancy was caused by omitting certain items in the account, which probably were not used in the buildings. From the smaller sum should be deducted $18, paid by *Mrs. La Flesh* for articles charged in the account, but returned, and, after the filing of the petition, again taken and used in the building. The court found that payments had been made on the general account to the amount of $310.21. No appropriation of these payments has been made by the parties, and the plaintiff seeks to apply them to the non-lienable items in the general account, except the $18 which we apply on the lienable items. It appeared on the trial that over $280 of the plaintiff's account consisted of advances made by the plaintiff to pay freights

chargeable to the defendant *Thomas.*  The money was so advanced without charge, for the accommodation of said *Thomas.*  In view of this fact, we think it entirely equitable to apply all the payments except the $18 above mentioned upon the account for cash advances and non-lienable goods.  Hence the lien should be for $448.80, and interest thereon from the commencement of the action, which was August 3, 1887.

The court found the amount unpaid on the whole account on May 24, 1887, to be $1,412.96.  In the fifth finding of fact, he found and allowed a further payment of $299.93, made November 17, 1887.  This was several months after the action was commenced, and after issue joined therein.  We are unable to find in the record any testimony relating to this alleged payment or any admission thereof.  It was therefore improperly allowed.  If such payment was in fact made, we think the circuit court may direct it to be allowed upon the judgment, because made after issue, and hence not covered by the pleadings in the action.  We are also of the opinion that the interest should be computed from the commencement of the action.

Some minor objections to the regularity or sufficiency of the pleadings and proceedings in the circuit court were made by counsel for the defendants on the argument of this appeal.  Some of these will now be briefly noticed. (1) It was objected that there was a variance between the petition for a lien and the complaint in that the petition charged the sale of the materials to both defendants *La Flesh,* while the complaint charged the sale to the defendant *Thomas* alone.  This variance is quite immaterial.  It can harm no one.  The complaint states the fact as it was proved on the trial.  And the petition is amendable at any time to make it correspond with the complaint and proofs. (2) The same remarks are applicable to another and similar objection, that the petition charges that the materials were

used in the erection of a certain building on the land in question, while the complaint alleges that the same were used in the erection of a house and barn thereon.   (3) It is said that the buildings are not sufficiently described.   The description thereof is as definite as the statute which gives a lien for materials furnished in the erection of a dwelling-house or other building upon the land.   R. S. sec. 3314. Both the petition for the lien and the complaint contain an accurate description of the land upon which the buildings were erected.   That is sufficient.   (4) Some criticism was made in the argument upon the practice by which judgment in the same action for one amount was rendered against the debtor, and a further judgment therein, making a portion of that amount a lien upon the land of another defendant.   We perceive no valid objection to this practice. · Certainly *Mrs. La Flesh* is not injured by it; and, inasmuch as the statute gives the defendant *Thomas* the right to a common-law trial by jury, we are equally unable to perceive that he has any valid ground for complaint.   (5) Sec. 3324, R. S., gives the plaintiff the right to have his costs paid out of the proceeds of the sale of the property against which the lien is adjudged.   Of course the defendant *Thomas* is liable for all the costs in the action.

It follows from what has been said that the judgment of the circuit court must be reversed, and the cause will be remanded with directions to that court to render judgment for the plaintiff in accordance with this opinion.

*By the Court.*— Ordered accordingly.