MARSHALL & ILSLEY BANK, Plaintiff, vs. HACKETT, HOFF & THIERMANN, INC., and others, Defendants.  [Cross-appeals.]

*September 13—November 7, 1933.*

For the plaintiff there was a brief by *Wengert & Moeller* of Milwaukee, and oral argument by *Eugene Wengert*.

For the defendant Grossman, trustee, there were briefs by *Bender, Trump, McIntyre & Freeman,* attorneys, and *Eugene L. McIntyre* and *Ronold A. Drechsler* of counsel, all of Milwaukee, and oral argument by *Mr. Drechsler* and *Mr. McIntyre*.

FOWLER, J.  The Ticonic Investment Company owned and leased to R. T. Maischoss property in the business district of Milwaukee for ninety-nine years and Maischoss assigned the lease to the Broadway Wisconsin Investment Company which was formed for the purpose of taking over the lease.  This corporation's principal stockholders were Max Thiermann, Maischoss, and A. K. Bentley.  Maischoss soon withdrew and Thiermann became the majority stockholder of the corporation and was its managing officer. Thiermann was also the majority stockholder and manag-

ing officer of the Hackett corporation, whose business was managing business properties, loaning money, and financing and underwriting bond issues. The Broadway Wisconsin Investment Company executed a trust deed of the leasehold to the Hackett corporation as trustee to secure a loan of $200,000 evidenced by serial bonds to be sold by the Hackett corporation. A second trust deed to the Hackett corporation as trustee of $75,000 was also arranged for at the same time. The money raised by these bond issues was used to erect an office building on the property. These trust deeds are hereinafter referred to as mortgages. As the building was constructed the Hackett corporation paid all costs from proceeds of its sales of the bonds and on completion of the building took over its management for three per cent. of the gross rents collected monthly. As rents were received they were entered by the Hackett corporation on the books of the mortgagor, which were kept by the Hackett corporation in the Hackett corporation's offices. The rentals as received were deposited by the Hackett corporation in the bank account of the mortgagor, and when the balance of the account after operating expenses reached $500, payments were made to the Hackett corporation, and deposited by it in its one general banking account, into which went all funds received from all of its various activities. There was no separation of trustee transactions from its general business transactions in its account with the mortgagor. From the first the receipts from the building were insufficient to pay operating expenses and the fixed charges of ground rent reserved by the ninety-nine-year lease, taxes, insurance, interest coupons on bonds, and maturing bonds. The Hackett corporation advanced money as needed to meet these fixed charges as they accrued. Up to August 1, 1930, it made its own checks in advance for interest coupons and kept them in a pouch for delivery on presentment of coupons, and after that date drew and issued its checks as coupons were presented. It also issued its own checks for all matured bonds presented

up to March 1, 1931. Bonds and coupons when paid by its checks were canceled. Because of insufficiency of rentals the mortgagor was always in debt to the Hackett corporation, except for a few days. The account began February 2, 1924. On March 14, 1928, the mortgagor had a credit balance of $89.35. When the account was closed on March 5, 1931, the mortgagor's debit balance was $75,643.84, the amount claimed by the appellant in his counterclaim.

By the terms of the first mortgage the trustee was to receive from the mortgagor and apply all sums as they fell due; in case of default the trustee was to exercise for the benefit of the bondholders all options conferred upon the trustee; in case of defaults in payment of insurance or taxes the trustee might pay them, and all sums so paid with interest at ten per cent. were to be added to the mortgage debt and be a lien on the mortgaged premises; upon any default the whole mortgage debt might be declared due by the trustee upon thirty days' notice; the trustee was to receive reasonable compensation for its services as trustee and might employ attorneys, and its fees and its attorneys' fees if not paid by the mortgagor were to be a first lien on all sums recovered under the mortgage.

The trial court found that the Hackett corporation had advanced for insurance and taxes subsequent to March 14, 1928, when the mortgagor had the $89.35 credit in its account, $30,653.19. For this sum appellant was allowed recovery and a lien therefor on a parity with that of the bondholders. Under the terms of the mortgage above referred to, we are of opinion that this allowance was proper. The advancement of these amounts was of advantage to the bondholders. The mortgage expressly provided for such allowance. The mortgage provision is precisely the provision allowed by statute in the absence of express provision in a mortgage. Sec. 74.67, Stats. The parity lien for taxes was especially advantageous to the bondholders, as had the taxes

not been advanced by the mortgagee the tax lien would have been prior to instead of on a parity with the lien of the bond-holders. *Endress v. Shove,* 110 Wis. 133, 85 N. W. 653.

The appellant claims that the court was in error in taking March 14, 1928, as the date from which advancements for taxes and insurance should be allowed and that the Hackett corporation's advancements for that purpose prior to that date should have been held lienable as well as those made thereafter. The basis of the court's fixation of March 14th as the date from which these advances should be held lienable was that as neither mortgagor nor mortgagee had made application of the funds received by the mortgagor up to that date, the court. might and should apply them as it deemed equitable. *Hannan v. Engelmann,* 49 Wis. 278, 5 N. W. 791, supports this view. The trial court considered that it was equitable to apply the funds received by the mortgagor prior to the time of the credit balance to payment of the advancements theretofore made by the Hackett corporation, and so applied them. We consider that this was correct.

Appellant contends that the account did not show a balance in favor of the mortgagor on March 14, 1928, but showed a balance due the Hackett corporation of $8,860.65. It is true that the balance as carried forward daily on the books does so show. But the bank's accountant testifies that the entries from which the balance is to be computed upon correct computation show a balance of $8,110.65 on that day, and we assume this to be the fact as counsel does not dispute it. The accountant also explains that a debit item of $8,200 cash entered in the account against the mortgagor prior to March 14th was in fact a check which was never cashed and which was entered nearly six months later to the credit of the mortgagor as a canceled check. We assume this to be the fact also, as it was not disputed. The mortgagor should not be charged with cash represented by a

check when the check was never paid. With these corrections a balance of $89.35 was in favor of the mortgagor on the date stated.

The appellant claims that the court in applying payments of debtor to creditor where neither has applied them will apply them to payment of unsecured items first, and that in accordance with this rule the court should have regarded the account as a whole and allocated the receipts of the mortgagor to payment of the unsecured items and left the total tax and interest advancements standing as lienable claims. As to the rule stated it is supported by the decisions of this court. *Wiedenbeck-Dobelin Co. v. Mahoney*, 160 Wis. 641, 152 N. W. 479; *North v. La Flesh*, 73 Wis. 520, 41 N. W. 633; *Stone's Estate v. Central Republic B. & T. Co.* 211 Wis. 518, 248 N. W. 446. This rule is applied when no third person is involved, but when such an application will operate to the hurt of a third person a court of equity should not make it. The bondholders here are entitled to have the avails of their security devoted to the payment of their bonds, undiminished by application for the protection of the trustee. They, not the trustee, are the persons for whose benefit the security was given. The trustee is entitled to no payments which would reduce the fund available to the bondholders except such as are expressly provided for in the mortgage. The appellant stands in no better position than the Hackett corporation. We consider that the trial court gave the appellant all the allocations to which he is in equity entitled when it so applied the mortgagor's receipts after March 14th as to make the tax and insurance advancements a lien on a parity with the lien of the bondholders.

The appellant also claims right of recovery herein and a lien for the ground rent advanced by the Hackett corporation as trustee. This was correctly denied by the trial court. The mortgage contains no provision that ground rent paid by the trustee shall constitute a lien in his favor, and in

absence of such a provision we perceive no ground for claim to a lien. Moreover, on making any such advance the trustee might have reimbursed himself out of the first or any subsequent rentals received, had he seen fit to do so, in the absence of any direction of the mortgagor for application otherwise. Having neglected to protect itself when it had the opportunity, it cannot now ask the court to protect it. If it did not wish to make advancements, it need not have done so. It could and doubtless should have resorted to foreclosure when inability to repay advancements out of net receipts from the property became apparent.

The appellant claims that proceeds from the bonds could not be applied to payment of advances because by the terms of the mortgages such proceeds had to be applied to the construction of the building, the $75,000 second-mortgage bonds absolutely and the $200,000 first-mortgage bonds so far as necessary, and that as the building cost $252,000, that amount of the proceeds had to be so applied. Even so, $23,000 of the first-mortgage bonds were available to reimburse the Hackett corporation. Twenty-five thousand dollars paid by Thiermann for preferred stock of the mortgagor was also so applicable, as were all other receipts of the mortgagor. The last item for construction was paid in February, 1925. Thereafter, in any view, all receipts from whatever source were available for reimbursement of advances, and as soon as a credit balance appeared the funds theretofore received might have been applied to such reimbursement and the court rightly so applied them.

The appellant also claims a lien for bonds and interest coupons paid by the Hackett corporation on the ground that by such payment the corporation became subrogated to the rights of the holders of the bonds and coupons paid. The trial court denied such relief and we think rightly. The trustee was under no compulsion or obligation to make these payments. It did not make the payment for protection of

any lien or interest of its own as it had none to protect. The transaction amounted to a loan to the mortgagor to enable the mortgagor to retire the bonds and coupons paid. Subrogation does not arise in favor of a mere volunteer. *Murphy v. Baldwin,* 159 Wis. 567, 150 N. W. 957, and cases cited.

It is urged in this connection that the Hackett corporation should have been allowed subrogation under the ruling in *Schroeder v. Arcade Theater Co.* 175 Wis. 79, 184 N. W. 542. In that case "the evidence showed that the trustee had advanced moneys for the payment of interest and held the matured interest coupons as security for such advances." *Schroeder Case, supra,* p. 82, par. 16 syllabus. There is no evidence here that the bonds and coupons were so held. They were canceled. Cancellation is inconsistent with holding as security.

The appellant urges, but not convincingly, that the findings of fact of the trial judge are in some respects contrary to the clear weight of the evidence. We do not so consider them. To recite in detail the findings of which complaint is made and the justifying evidence would unduly extend this opinion and serve no useful purpose.

It is to be observed that this case is similar in its facts to the case decided herewith of the same plaintiff against the Guaranty Investment Co. (*ante,* p. 415, 250 N. W. 862), including as defendants Grossman as trustee in bankruptcy of the Hackett corporation and Elblein as trustee. In that case Grossman, as trustee in bankruptcy of the Hackett corporation, made claim for a lien for insurance, taxes, ground rent, and bonds and interest coupons paid by the Hackett corporation as here, and was denied any lien whatever, even for taxes. The disallowance of a lien for taxes and insurance therein and the allowance thereof herein might seem at first blush to be inconsistent. But while the general conduct of the Hackett corporation as trustee was practically

the same in the two cases, the difference in the terms of the two bonds seems to us to support and justify the difference in treatment of those items. In that case the trust deed by its terms authorized the trustee to advance funds to pay taxes, insurance, ground rent, interest coupons and bonds as they matured in case of the mortgagor's default and provided that in case he did so he should have a lien for all such advances with interest at ten per cent. thereon prior to the lien of the bonds. Thus upon the payment of any such items, the interests of the trustee became adverse to those of the holders of the bonds, and it was considered that under those circumstances the duty devolved upon the trustee to notify the bondholders of any such payments so that they might take steps to protect themselves against the trustee's accumulating liens superior to theirs to the great diminution and ultimate destruction of their security. The breach of trust by the trustee in failing to give such notice and thus lulling the bondholders into the belief that all was well with their security, was held to require the disallowance of all its claims for lien for want of equity and for forfeiture of its rights under the stipulations of the mortgage. In this case the interest of trustee and bondholders at no time became adverse. The trustee's lien and theirs were on a parity. The trustee could gain no rights superior to theirs by such advancements as it made. The bondholders could lose no security by reason of the trustee's advancements. They could only gain thereby through the cancellation of interest coupons and matured bonds that otherwise would have shared the security with them.

*By the Court.*—The judgment of the circuit court is affirmed.