Leontine E. Myers et al., Appellants, v. American
National Bank and Trust Company of Chicago
et al., Appellees.

Gen. No. 37,570.

Opinion filed November 19, 1934.
Rehearing denied and additional opinion filed December 5, 1934.

Shulman, Shulman & Abrams, Russell, Murphy & Quigley and A. L. Myers, for appellants; Meyer Abrams, of counsel.

Sonnenschein, Berkson, Lautmann, Levinson & Morse and Poppenhusen, Johnston, Thompson & Cole, for appellee American National Bank & Trust Co. of Chicago; Anan Raymond and Isaac E. Ferguson, of counsel.

Altheimer, Mayer, Woods & Smith, for appellee Wabash-Harrison Bldg. Corp.; Gideon S. Thompson and Herman A. Kabaker, of counsel.

Gottlieb & Schwartz, for appellees Charles C. Irwin et al.; Claude A. Roth and Harry E. Smoot, of counsel.

Mr. Presiding Justice O'Connor delivered the opinion of the court.

Complainants, as owners of bonds secured by a trust deed on property located at the southeast corner of Wabash and Harrison streets, Chicago, filed their bill on behalf of themselves and other bondholders against the defendants, praying that a decree of foreclosure, entered in a suit brought by the trustee in the trust deed securing the bonds, be vacated and set aside on the ground that it had been entered by collusion between the parties for the reason that parties to the foreclosure suit did not represent adverse interests; that the bondholders, who were the real parties in interest, were not made parties, and that if they had been made defendants the decree would have protected the bondholders' rights. A further prayer was that the trustee in the trust deed be removed, that there be an accounting, that the parties found personally liable be decreed to pay complainants any amount thus found

due, and that it be decreed to be a lien on the premises in question. There were other prayers for relief which need not be mentioned here.

All the defendants except two filed their answer substantially denying the material allegations of the bill. The defendants S. W. Straus & Co., a corporation, and Melvin L. Straus, individually and as trustee, filed their joint and several demurrer. On May 18, 1933, an order was entered sustaining the demurrer and dismissing the bill as to the demurrants for want of equity, to which order the complainants excepted. Two days thereafter the cause was referred to a master in chancery to take the evidence and make up his report with his conclusions thereon. The master took the evidence, made up his report, and recommended that a decree be entered dismissing the bill for want of equity. Objections to the report were overruled. Afterward a decree was entered overruling all exceptions to the master's report and dismissing the bill at complainants' costs for want of equity, and complainants prosecute this appeal.

The record discloses that on July 1, 1928, the Michigan Boulevard Garage Corporation executed its trust deed to defendant Straus National Bank & Trust Company (since changed to American National Bank & Trust Company of Chicago) to secure its bond issue of $2,225,000, $2,100,000 of which was a first lien, and the remaining $125,000 a junior lien on the premises conveyed by a trust deed. It is stated that S. W. Straus & Co., a copartnership consisting of Simon W. Straus, Samuel J. T. Straus and Sidney H. Kahn, underwrote the bond issue, but the facts concerning what the co-partnership did were not very clearly brought out. The defendant S. W. Straus & Co., a corporation, was engaged in the investment bond business and apparently bought the bond issue from the co-partnership and later sold the bonds, or some of them, to the public.

This corporation circularized the public in an endeavor to sell the $2,100,000 of bonds and stated, "We Own and Offer" the bonds for sale. The circular contains a picture of the proposed building, which was to be known as the Wabash-Harrison Building, and was to be 19 stories high, 12 stories of which were for office space and 7 to be used for a garage and stores. The bonds are described as "First Mortgage Sinking Fund 6% Gold Bonds." The circular describes the property and the character of the building to be constructed, and states that the land is "owned in fee" by the maker of the bonds and the trust deed, the Michigan Boulevard Garage Corporation; that the land has been appraised by two appraisers, the lower appraisal being $1,213,360, and that the proposed building was appraised by an architect at $1,872,732, making a total appraised value of $3,086,092. The circular further states that it is estimated that the annual net earnings of the property will be $329,300. The circular further contains the statement that the construction of the building will be undertaken at once and completed in accordance with the plans and specifications free of all prior liens, and that the construction is unconditionally guaranteed to the bondholders by the defendant S. W. Straus & Co., a corporation, "which reserves the right, however, to release and discharge its liability under this guarantee by repurchasing bonds at the original purchase price and accrued interest." There was a further provision for a sinking fund, which requires that periodic deposits be made by the mortgagor with the trustee on account of principal and interest; the amounts and dates of such deposits are specifically set forth.

It further appears that after the circular was issued the complainant Meyers bought bonds of the face value of $1,500 and the complainant, Phelps, $10,000, and there is evidence to the effect that all the complainants were owners of bonds of the face value of $32,700. It

further appears that the construction of the building was not commenced until a considerable time after July 1, 1928, the date of the bonds and trust deed, and that it was not completed by August 1, 1929, as the trust deed provided, but on the contrary the building was not actually commenced until after August 1, 1929, and was not completed until about September, 1930. Straus & Co. seems to have had considerable difficulty in disposing of the bonds, and on December 15, 1929, it issued a "Revised Circular" describing the same bonds and offering them for sale, but the picture of the building to be constructed is a great deal different in appearance from the picture of the building in the original circular. In the revised circular it is stated that the building will consist of two units, one to contain a "12-story 370-room hotel with five stores, and the other to contain a 21-story 600-car garage." The valuation placed on the land in the revised circular is the same as in the original, viz., $1,213,360, but the building is appraised at $1,954,395, or $81,663 more than is shown in the original circular, and in addition the revised circular values hotel furniture and furnishings and garage equipment to be installed, at $300,000. The estimated net income, however, is but $211,396 or $117,904 less than the estimated net income from the building described in the original circular.

On December 15, 1929, the same date the revised circular bears, the Wabash-Harrison Building Corporation, which was a new corporation organized, acquired all the rights of the Michigan Boulevard Garage Corporation, the mortgagor, and on that date the Wabash-Harrison Building Corporation entered into a supplemental trust deed and chattel mortgage with the trustee named in the original trust deed, viz., the Straus National Bank & Trust Co. of Chicago, as trustee. By the terms of the supplemental trust deed the original trust deed was changed and modified so that the character of the building might be changed and the time

within which the building was to be constructed was extended to September, 1930.

Three days after the execution of the supplemental trust deed there appears in the record a document which purports to be an agreement between the Wabash-Harrison Building Corporation and . S. W. Straus & Co., a copartnership, whereby the building corporation agrees to sell and the Straus Company agrees, among other things, to buy the $2,100,000 bonds. Just how these bonds could be sold by the building corporation to the copartnership on December 18, 1929, when the bonds were issued on July 1, 1928, and a great many of them sold to the public shortly thereafter, is not explained.

The evidence further shows that on December 15, 1929, the Wabash-Harrison Building Corporation executed its junior mortgage trust deed and chattel mortgage to the Straus National Bank and Trust Company of Chicago, as trustee, securing $200,000 of six per cent junior mortgage gold bonds. It appears that there was not sufficient money to complete the building, and S. W. Straus & Co., the corporation, apparently agreed to put up $200,000 for this purpose. It was to receive a bond issue for this amount secured by a junior mortgage on the property, upon the express condition that one of the tenants, which had been secured for the building when it should be completed and which had deposited with the Straus Bank $108,000 on account of rent which would fall due under its lease, would direct the bank to turn this money over to Straus & Co. in part payment of the $200,000 bond issue. It further appears that when the building was completed the tenant carried out this requirement and ordered the Straus Bank to turn over the $108,000 to Straus & Co., which was done.

There is other evidence to the effect that when the interest coupons came due they were presented to Straus & Co. and paid. Straus & Co. advanced the money but

this was unknown to the bondholders. In the agreement of December 18, 1929, between the Wabash-Harrison Building Corporation and Straus & Co., the copartnership, which we have above referred to, it was provided that Straus & Co. might retain $203,142.50 of the purchase price of the bonds, and that that sum be applied to reimburse Straus & Co., for payments of interest theretofore made by it to the bondholders; and the agreement further provided that Straus & Co. might retain $130,640 as a reserve for the payment of carrying charges on the bond issue up to August 31, 1930, including monthly deposits on account of interest on the bonds.

There is other evidence that tends to show that more than $750,000 derived from the sale of bonds was used to purchase the fee of the property on which the building was constructed.

We find it unnecessary to mention other evidence in the record in view of the fact that there must be a retrial of the cause.

On the hearing before the master complainants offered a number of documents and evidence as to the ownership of the bonds represented by complainants, which were excluded by the master. This was error. All of this evidence should have been admitted.

The officers of S. W. Straus & Co., a corporation, were Simon W. Straus, president, Samuel J. T. Straus, vice president, Sidney H. Kahn, vice president, William W. Straus, vice president, and Melvin L. Straus, vice president; the first three officers of the Straus Corporation above named composed the partnership of S. W. Straus & Co. Two of the officers of the Straus National Bank were Samuel J. T. Straus, president, and Melvin L. Straus, vice president.

In the foreclosure suit the sole complainant was the Straus National Bank and Trust Company, as trustee, and the only defendants were Melvin L. Straus, trustee under a junior mortgage and chattel mortgage, the

Wabash-Harrison Building Corporation, and S. W. Straus & Co., a corporation. From this it appears that the principal officers, or some of them at least, were officers of the Straus & Co. Corporation, the Straus Bank and the Straus copartnership, and each of these concerns must be presumed to have had knowledge of the facts with reference to the construction of the building and the payment of the moneys to the various bondholders for interest and of matters of this character. *Simmons v. Roseland Security Vault Co.*, 331 Ill. 563. And the evidence is to the effect that the mortgagor was in default and that the interest paid on the bonds, or a great part of it, was taken out of the money received from the sale of the bonds. The building was not completed within the time provided for. Its character and size were materially changed, and the evidence tends to show that the bondholders knew nothing of these facts but assumed, as they had a right to assume, that the interest was being paid by the mortgagor and that the building was constructed within the period provided for in the original trust deed. Straus & Co., a corporation, unconditionally guaranteed that the building would be constructed as provided by the circular, to which reference has heretofore been made, but on account of the lack of knowledge on the part of the bondholders they were lulled into a belief that all was well with their security.

The interests of the trustee, the Straus Bank, the corporation and the partnership, were all adverse to that of the bondholders on account of the relationship of the parties. The bank, as trustee in the trust deed, should have notified the bondholders of the facts so that they would be in a position to protect themselves. *Marshall & Ilsley Bank v. Guaranty Investment Co.*, 213 Wis. 415; *Marshall & Ilsley Bank v. Hackett, Hoff & Thiermann*, 213 Wis. 426. That the interest of all these parties was also adverse to the bondholders is shown by the fact that after some of the complainants

had purchased their bonds, $203,142.50 and $130,640, part of the proceeds of the bonds, was kept by Straus & Company to reimburse Straus & Co., the corporation, for moneys it had theretofore paid out for interest; that $108,000 received as rent from one of the tenants, instead of going toward the payment of bonds, was applied to the payment of second mortgage bonds. If the rent could thus be diverted, the bondholders could not be paid their interest or bonds as they became due, because the sole revenue received by the corporation making the trust deed and bonds was rent from the building. If the action of the defendants in this case could be justified, the bondholders who had invested their money in first mortgage bonds would be without any protection. But the defendants, or some of them, say that by the terms of the original trust deed the trustee was empowered and authorized to modify the mortgage as was done when it joined in the execution of the supplemental trust deed. The provision of the original trust deed, which it is said gives such authority, provides that ''The Trustee is hereby empowered to join the Mortgagor in modifying, amending, altering or supplementing this Indenture in its absolute discretion (but without affecting the priority of first mortgage bonds over general mortgage bonds) if it shall deem that the same is consistent with the best interests of the bondholders, provided, however, that no such amendment . . . shall impair the lien of this Indenture as security for the indebtedness hereby secured.'' We think what was done after the execution of the trust deed and the sale part of the bonds, as shown by the evidence hereinbefore mentioned, was not warranted by the provision of the trust deed above quoted. Here the character of the building was altered, and the estimated income to be derived from the building was much less than the estimate shown to the original purchasers of some of the bonds. The diversion of the rents and

part of the proceeds of the sale of the bonds all tended to impair the security of the bondholders, and on account of the interrelation of the parties the bondholders should have been notified.

As said by the Supreme Court of Wisconsin in *Marshall & Ilsley Bank v. Guaranty Investment Co., supra* (213 Wis. 415, 422, 423): "It is our conclusion that the trustee under a bond issue does owe to the bondholders certain duties independently of the terms of the trust deed, and that these duties will be imposed regardless of any exculpatory provisions in the trust deed. Such a trustee has an obligation to exercise good faith as well as ordinary vigilance and intelligence in protecting the interests of the bondholders."

For the reasons stated the decree of the circuit court of Cook county is reversed and the cause remanded with directions to overrule the demurrer (*People v. Banks,* 285 Ill. 137; *Chicago & W. I. R. Co. v. City of Chicago,* 294 Ill. 257) and for other proceedings in accordance with the views herein expressed.

*Reversed and remanded with directions.*

McSurely and Matchett, JJ., concur.

Additional Opinion on Petition for a Rehearing.

Complaint is made in the petition for a rehearing to the effect that language is used in the opinion that might be held to preclude the defendants on the retrial of the case, and that this should not be because some of the evidence offered by the complainant, both oral and documentary, was excluded and therefore not considered by the master or the chancellor. We think it obvious that such a contention is not warranted because the case is to be tried anew, when all the facts can be adduced.

Complaint is also made to the holding in the opinion that certain of the bonds in question, which were of-

fered by counsel for complainant, were admissible in evidence. Under elementary principles of the law of evidence, the bonds prima facie were admissible. To the suggestion made by counsel that this holding will be "an invitation to strike suits by speculators in defaulted securities" we might suggest that any facts bearing on this question obviously would be admissible. The chancellor owes the duty of being vigilant to see that complainant be not permitted to create a maneuvering value of his bonds. "Courts of equity should be deemed no less powerful today than when the first chancellor looked to his conscience for guidance, to make fair dealing between man and man the test." *Investment Registry v. Chicago & M. E. R. Co.*, 212 Fed. 594, 610.

To the suggestion of counsel that the opinion gives the impression "that there is something wrong about use by a mortgagor of part of the proceeds of a real estate mortgage bond issue to pay interest on the bonds during the construction period, or use of part of the money to complete purchase of the land," we say that whether such proceeds may be so used depends upon the terms of the trust deed and all pertinent facts.

The petition for a rehearing is denied.

*Petition denied.*

McSURELY and MATCHETT, JJ., concur.