**Ernest R. BROWNING, Plaintiff-Appellant,**

v.

**SWIFT & CO., a Foreign Corporation, Defendant-Appellee.**

**No. 16110.**

United States Court of Appeals
Seventh Circuit.

Nov. 29, 1967.

Donald J. Harman, Johns, Pappas, Flaherty & Harman, La Crosse, Wis., for appellant.

Berton D. Sherman, Tarrant, Lund & Sherman, Black River Falls, Wis., for appellee.

Before KNOCH, KILEY and SWYGERT, Circuit Judges.

KNOCH, Circuit Judge.

The plaintiff-appellant, Ernest R. Browning, a turkey-grower, brought suit in the United States District Court to recover from the defendant-appellee, Swift & Co., the sum of $95,857.00, the sales price for mature turkeys sold to the defendant. The Trial Court allowed set-offs in the total amount of $95,026.69 and entered judgment for the plaintiff in the sum of $330.21. This appeal followed.

Plaintiff bought turkey poults which were delivered to plaintiff in March, 1964, from the defendant's hatchery. Plaintiff acquired the feed to raise these poults from H. H. Van Gorden & Sons Feed Co., and depended for financing secured from the Jackson County Bank to carry him through the period until the poults could be matured and sold. When the birds did reach maturity, the plaintiff sold them to the defendant.

One of the set-offs allowed concerned the original purchase price of the poults. The plaintiff contends that the poults, although delivered directly to him, were actually sold not to him but to the feed company which in turn sold them to him. Thus, he argues that he is not indebted to the defendant for the purchase price of the poults but to the feed company. Plaintiff relies on three documentary exhibits: (1) defendant's exhibit 9, an invoice dated April 7, 1964, from the feed company referring to the sale of poults delivered by the defendant to the plaintiff; (2) defendant's exhibit 10, a letter dated May 13, 1964, from the feed company stating that the amount of the said invoice was charged to the feed company by the defendant and was charged by the feed company against the plaintiff's "note receivable," and stating further that the feed company would carry it for the plaintiff until his birds were sold; and (3) defendant's exhibit 11, an invoice of the defendant dated November 5, 1964, addressed to the feed company, listing the sales prices and dates of delivery of the poults to the plaintiff—among other transactions, not here involved. Plaintiff contends that the Trial Judge erred in allowing testimony in violation of the parol evidence rule to vary the documentary evidence of the three exhibits which the plaintiff views as embodying a contract. However, these three documents standing alone do not comprise a clear and unambiguous contract, the terms of which were allowed to be varied by the testimony, which clearly showed that the poults

were ordered by and sold to the plaintiff directly.

There was testimony that plaintiff required financial assistance but that at the time of arranging the purchase he had not yet determined on a feed company which would provide feed and financing; that practices on financing in this field vary and that some feed companies engage in joint financing with the seller of the poults, some pay the seller directly at once, and others merely guarantee payment by the grower.

James Dougherty, president of H. H. Van Gorden & Sons, the feed manufacturer whom the plaintiff eventually chose, testified that he guaranteed payment for the poults. Defendant's hatchery manager testified that pursuant to custom in credit sales he sent the guarantor an invoice.

Mr. Dougherty testified further that his company financed the plaintiff's 1964 operation to the extent of the necessary feed, cash advances, medication, etc. through the Jackson County Bank whose loan limit would not allow their financing the poult purchase as well. He, therefore, arranged to have the defendant carry the poult purchase and gave defendant his guaranty on the arrangement.

The plaintiff objected to all this oral testimony as to guaranty by the feed company because no writing was produced in Court. The plaintiff contends that admission of this testimony was barred by the Statute of Frauds, but this is not a case in which a guaranty which does not meet the requirements of the Statute of Frauds is sought to be enforced. The testimony was offered to explain the actions of the parties to meet the plaintiff's contention that the poults were sold by defendant to the feed company and not to the plaintiff. The plaintiff relies on that contention for his argument that the purchase price of the poults was improperly allowed as a set-off against the sum due for the purchase of the mature birds by the defendant from the plaintiff.

The feed company took a note from the plaintiff and endorsed it to the Jackson County Bank. That note was secured by a chattel mortgage on the turkeys. Mr. Dougherty explained the notations on his company's invoice and letter as arising out of a dispute between the plaintiff and defendant, which was never settled, respecting undue mortality among the poults. He said that as his firm was responsible to the defendant and as plaintiff's ability to pay depended on his success with the turkeys, Mr. Dougherty was interested in getting this matter and any possible adjustment due settled. He, therefore, sent the documents to the plaintiff noting the amounts charged and in his letter, sent two months after delivery, asked for information on any complaints by the plaintiff or any requests for adjustment. He explained further that the reference to charging plaintiff's "note receivable" was a mistake as no money had been transferred. There was no actual signed "note receivable" but that wording was used to distinguish between actual sales and cash advances made by the feed company. He said further that the mistake had been corrected long before the mature birds were sold; that a charge of this sort would be noted on the books of the feed company if moneys were actually paid out to or on behalf of the plaintiff.

After the sale to the defendant, plaintiff advised the defendant's agent to make the check for the purchase of the mature birds payable to the plaintiff and to the feed company. He stated that he was still trying to adjust the original price for the poults to cover unusual losses from disease. The defendant however, had issued checks in the total sum of $61,532.93 payable to the plaintiff, the feed company, and the Jackson County Bank, holder of the note and mortgage, which the plaintiff refused to endorse so that the Bank might be paid. Defendant credited the plaintiff's account in the amount of $34,324.07, the original purchase price of the poults plus 6% interest from date of delivery. The credit and the issued checks comprised the to-

tal agreed purchase price for the mature birds.

Learning in December, 1964, that the mortgaged security had been sold to defendant, and having received no payment of their note, by February, 1965, with the knowledge that the proceeds of the sale would not pay the note in full with interest accruing at $11 per day, the Bank demanded payment of the mortgage obligation from the defendant which had purchased the mortgaged assets with actual knowledge of the mortgage.

Plaintiff stated that he was holding the checks hoping to make some settlement with the feed company on the basis of the diseased poults.

The defendant stopped payment on the checks previously issued to the plaintiff, issued a new check to the Jackson County Bank in the amount of $61,532.92, and on April 16, 1965, obtained an assignment of the mortgage and that part of the obligation owed to the Bank by the plaintiff as was represented by the payment for the mature turkeys. This payment of $61,532.92 was the basis for the second set-off.

The District Judge had entered partial summary judgment with respect to the payment to the Bank, but subsequently he modified that judgment to the extent that it disposed of the disputed issue of whether it was a condition of the sale of the mature birds to defendant that they be free and clear of the lien of the mortgage. At the trial, the District Court heard testimony on the issue of the understanding of the parties to the sale and was satisfied that both parties did understand that the outstanding mortgage was to be paid contemporaneously with the sale and that plaintiff himself asked the defendant's agent to include as a payee of the check for the purchase price, the feed company, which plaintiff thought of as the holder of the mortgage. The Trial Judge concluded that it was purely a matter of mechanics to include the Bank as payee in addition to the feed company.

The plaintiff insists that defendant was only a volunteer as to the payment to the Bank, that defendant has failed either to show novation or to satisfy the requirements of the Statute of Frauds on an implied promise by a third party to answer for the debt of another.

In this case there was no claim of any novation by discharge of an existing debt through substitution of a new valid obligation. The defendant had knowingly purchased mortgaged property. The lien followed the unreleased subject of the chattel mortgage. To protect itself as secondarily liable, and not as a mere volunteer, the defendant for a valuable consideration, secured assignment of the note from the Bank. Bank of Baraboo v. Prothero, 215 Wis. 552, 558–559, 255 N.W. 126 (1934); Marshall & Ilsley Bank v. Hackett, 213 Wis. 426, 433–434, 250 N.W. 866 (1933). Having acquired the assignment for a valuable consideration, the defendant now had available to it the remedies which were available to the assignor Bank. Cotton v. Watkins, 6 Wis. *629 (1858) including that of set-off against plaintiff's claim for the purchase price of the mature birds. Wis.Stat. Anno. (West) 260.14.

When the plaintiff asked that the check for the mature birds be made payable to himself and to the mortgage holder, he was promising to pay the mortgage, which was his own debt, contemporaneously with the sale, but contrary to plaintiff's view, the Bank was not a third party beneficiary seeking to enforce that promise. The Bank was making a demand on one who had purchased and put to its own use mortgaged property which had thus been placed beyond reach of the mortgagee Bank.

We have carefully studied all points and authorities offered for our consideration by the plaintiff, but we remain satisfied that the judgment of the District Court must be affirmed.

Affirmed.