Murphy, Appellant, vs. Baldwin and wife, Respondents.

*January 13—February 9, 1915.*

*Trial by court: Admission of incompetent evidence: Refusal to con-*
*sider it: Loan of credit to pay secured debt: Subrogation.*

1. In an equity case, after incompetent testimony had been admitted, it was entirely proper for the court to announce that it would not consider such testimony and to refuse to receive further evidence of like character.
2. A finding in this case that defendant did not promise to give plaintiff security for his indorsement of defendant's note is *held* to be sustained by the evidence.
3. One loaning money or credit to pay a debt of the borrower secured by a mortgage or otherwise, is not entitled to subrogation if there was no promise to give him security, even though he in good faith believed he was to receive security. *Stewart v. Stewart,* 90 Wis. 516, distinguished.

Appeal from a judgment of the circuit court for Brown county: S. D. Hastings, Circuit Judge. *Affirmed.*

During the fall of 1906 the defendant *H. W. Baldwin* was indebted in the sum of about $10,000. Of this amount he owed $5,000 to the Citizens National Bank of Green Bay, secured by mining and oil stocks; about $2,500 to the Building & Loan Association of Green Bay, which was secured by two mortgages on his homestead; and about $2,500 in floating indebtedness. He desired to concentrate his indebtedness, and about December 1st applied to the plaintiff for a

loan of $10,000 for the purpose of paying his then creditors. He told plaintiff that he would turn over to him as security for the loan the securities then held by the bank, and that if these were not considered sufficient he would give a mortgage on his house. Plaintiff stated he would consider the matter, and in a few days advised *Baldwin* that the bank was willing to carry the loan which it held and did not care to have it disturbed. *Baldwin* stated that if such was the case he need borrow only $5,000, and asked plaintiff to indorse his note for this amount, which plaintiff did. *Baldwin* testified that nothing was said about his giving any security on this occasion, while plaintiff testified to the contrary. Defendant's note, indorsed by plaintiff, was discounted, and plaintiff was obliged to pay it. Of the money secured on the note, the sum of $2,542 was used in paying the mortgage indebtedness held by the building and loan association on *Baldwin's* home.

This action was brought by the plaintiff to set aside the satisfactions of the mortgages referred to and to revive the same and to subrogate the plaintiff to the rights of the mortgagee prior to the payment of the indebtedness to the building and loan association and to foreclose such mortgages, to the end that plaintiff might recover, through a sale of the mortgaged premises, the sum of $2,542 and interest in partial payment of the indebtedness due him.

Among other things the court found that the $5,000 note was indorsed by the plaintiff at *Baldwin's* request, for the express purpose of assisting *Baldwin* in getting the necessary money to pay off the mortgages on his home, and that the sum of $2,542 received on the note was so used. The court further found that neither of the defendants agreed to give plaintiff any security for his indorsement.

As conclusions of law the court found that plaintiff was entitled to a money judgment only against *H. W. Baldwin* for the amount paid on the note and interest, and that the wife, *Anna C. Baldwin,* was entitled to judgment dismissing

the complaint. Plaintiff appeals from the judgment entered in accordance with the findings of fact and conclusions of law.

For the appellant there were briefs by *James H. McGillan,* attorney, and *Greene, Fairchild, North, Parker & McGillan,* of counsel, and oral argument by *James H. McGillan.*

For the respondent there was a brief by *Martin, Martin & Martin,* and oral argument by *Joseph Martin.*

BARNES, J. This case has been well briefed and ably argued at the bar, and the learned circuit judge has favored us with a terse and lucid opinion setting forth his views.

The errors assigned are: (1) The court excluded testimony which should have been received. (2) The court should have found as a fact that *Baldwin* agreed to give plaintiff security for his indorsement. (3) The court should have held as a matter of law that plaintiff was entitled to subrogation, regardless of any promise to give security. (4) The court should have held that plaintiff believed in good faith that he was to receive security for his indorsement, and in such a case he was entitled to be subrogated to the rights of the creditor whose debt he paid.

1. On the trial plaintiff sought to prove by the cashier of the bank where the indorsed note was discounted that plaintiff informed him that he expected to be secured for his indorsement. The evidence was excluded. Questions were asked which pertained to the time at which the transaction took place as well as to a later period. There was no pretense that *Baldwin* was present at any of these conversations. All such evidence was held to be incompetent because self-serving and hearsay. It is not claimed that the evidence was competent unless made so by certain questions asked of plaintiff on cross-examination and on redirect. He testified on cross-examination that he told the bank directors that he was to have mortgage security for his indorsement. This evidence related to

a time long after the note was indorsed.   On redirect exami-
nation he testified that he made such a statement about the
time the bank took the note.   The court said that it would
eliminate all this testimony from consideration in deciding
the case.   We think it was entirely proper for the court to
say that it would not consider incompetent testimony that had
been admitted and that it would not receive any more evi-
dence of a like character.   In effect, though not in form, the
court struck out the incompetent evidence that had been ad-
mitted.   It would, we think, be a surprise to the profession
to learn that in the trial of equity cases, where great latitude
is often allowed in offering evidence, the court, once having
admitted incompetent testimony without objection, could not
decline to consider it.

2. The finding that there was no promise to give security
cannot be disturbed.   The statement of *Baldwin* about giv-
ing security was made when he sought to borrow $10,000
from the plaintiff.   A different arrangement was made at a
later date, and *Baldwin* says he did not agree to secure the
plaintiff on his indorsement.   The principal witnesses were
plaintiff and *Baldwin*.   The condition of the evidence was
such that a finding either way upon it would not be disturbed
by this court.   We are not satisfied that the trial judge pro-
ceeded on any erroneous theory in reaching a conclusion on
the facts.

3. The main question in the case arises on the contention
that on the facts found plaintiff was entitled to subrogation.
Decisions can be found both ways on the proposition.   On
the one hand it seems equitable enough, where money or credit
is borrowed to enable a debtor to pay a mortgage, and this
fact is known to the parties and it is so used, that the party
who in fact pays the debt should be placed in the shoes of the
creditor who has been paid.   On the other hand, it is a maxim
of equity that it aids the diligent.   The plaintiff was in a
position where he might have exacted security if he desired

it. If he could not obtain it, he might withhold his indorsement. Not having done what prudence would dictate, should a court of equity supply a remedy to relieve him of the result of his carelessness? We think the question has been answered adversely to the plaintiff by the decisions of this court. It is difficult to see wherein the plaintiff is in any different or better position than he would have been had he loaned the money outright instead of indorsing defendant's paper. This court is committed to the doctrine that in the case of a loan of money or credit unaccompanied by a promise to give security, no right of subrogation exists, even where it is understood that the money is to be used in paying a secured debt. *Downer v. Miller*, 15 Wis. 612; *Watson v. Wilcox*, 39 Wis. 643. The rule of these cases is approved in *Wilton v. Mayberry*, 75 Wis. 191, 43 N. W. 901. The case of *Downer v. Miller* is exactly in point, in that it holds that a party loaning his credit to pay an existing indebtedness is not entitled to subrogation in the absence of an agreement to give security. Had the plaintiff been obliged to pay the mortgages to protect some lien of his own on the mortgaged property, or had the debtor agreed to give security on the mortgaged property, or had the plaintiff been a surety for the payment of the mortgage debt, then the right of subrogation would follow. *Wilton v. Mayberry, supra; Hughes v. Thomas*, 131 Wis. 315, 111 N. W. 474; *Downer v. Miller, supra; Poluckie v. Wegenke*, 137 Wis. 433, 119 N. W. 188. The doctrine of the cases cited is not shaken by *Carey v. Boyle*, 53 Wis. 574, 11 N. W. 47, which involved the existence of a purchase-money lien rather than a right of subrogation, nor by *Hughes v. Thomas, supra,* where there was an agreement to give security.

4. The point is made that the plaintiff in good faith believed when he indorsed the note that he was to receive security, and under the doctrine of *Stewart v. Stewart*, 90 Wis. 516, 63 N. W. 886, he was entitled to subrogation for this reason. The facts in the two cases are entirely dissimilar.

In *Stewart v. Stewart* the mortgage was paid in good faith, the payors believing that they owned the title to the mortgaged property, and it was held that as against the true owners, who received the benefit of the payment, such payors should be subrogated to the rights of the mortgagee whose mortgage they paid. Here there is no element of mistake. The court found on sufficient evidence that there was no agreement to give security, and, accepting this finding as a verity, there is no ground for applying the rule of the *Stewart Case.*

*By the Court.*—Judgment affirmed.