WHALEN, Plaintiff: SCHUMACHER and another, Appellants, vs. MARLING and another, Respondents.

*February 9—March 14, 1922.*

*Subrogation: Mortgage paid by money fraudulently borrowed: Rights of lender: Constructive trusts.*

1. G., an owner of a piece of land subject to a first mortgage of $2,000 owned by P. and a second mortgage of $800 to L. G., forged releases of said mortgages and executed four successive mortgages to different persons, each prior mortgage being satisfied by a forged instrument, and the property being inadequate security for the total debt. G. then executed a mortgage on another piece of land to M., falsely representing that it was a first mortgage, whereas prior mortgages had been released by forged satisfactions, and paid the greater portion of the proceeds of the loan from M. to the attorney for P. in satisfaction of his mortgage and interest, but did not secure a written release of P.'s mortgage. *Held,* on the theory of subrogation, that M. was not entitled to the rights of P. under his mortgage, as M. was not to receive a lien on

the land covered by P.'s mortgage and there was no agreement between M. and G. as to the application of the money loaned.

2. G., however, thereby became a constructive trustee for the lender, who was entitled to have the mortgage so paid revived and constitute an existing obligation against G. for the benefit of the lender.

3. One from whom money has been obtained by fraud may follow and reclaim it or have a trust imposed upon the property into which it has gone, so long as it can be distinctly traced and identified, and provided that no injustice is done to one who stands in the position of a purchaser for value without notice.

APPEAL from a judgment of the circuit court for Dane county: OSCAR M. FRITZ, Judge. *Affirmed.*

The appellants, *Schumacher* and *Harper,* express no dissatisfaction with the findings of fact made by the trial court, but assert that the court erred in its conclusions of law and in entry of judgment based thereon. The facts are complicated, many issues are disposed of other than those raised upon this appeal. We shall therefore attempt to state the facts only so far as is necessary to present the questions raised here.

From the findings it appears that in April, 1918, Gunderson sold and conveyed to Clarence F. Green the southwest half of lot 15, block 31, Third addition to Fair Oaks, which description we shall hereafter designate as tract No. 1. That at the time of the conveyance the property was subject to a mortgage executed and delivered by Gunderson to William Pammesberger on June 29, 1917, to secure the payment to him of a note of even date for $2,000, which mortgage was duly recorded in Dane county. That in consideration of the conveyance Green assumed the payment of the note and mortgage to Pammesberger, and at the time executed and delivered a second mortgage to Gunderson upon tract No. 1 for the sum of $800, which was part of the purchase price. That the relation of attorney and client had existed between Gunderson and Pammesberger for a number of years prior to April, 1918.

Upon April 19, 1918, Green, having forged and recorded a discharge of the Pammesberger mortgage and the mortgage which he had given to Gunderson, executed a mortgage to the Northwestern Securities Company to secure the payment of $1,600.   On July 10, 1918, he executed a mortgage upon tract No. 1 to *William G. Schumacher* to secure the payment of $1,300, and on August 3, 1918, Green executed to *J. C. Harper,* as guardian for Nellie Wiswall, a mortgage upon tract No. 1 to secure the payment of $1,800, the successive loans being secured by forged and recorded satisfactions of prior mortgages.

On January 16, 1919, Clarence F. Green executed to *William P. Whalen* a mortgage upon tract No. 1 to secure the payment of $2,000, falsely and fraudulently representing to *William P. Whalen* that the mortgage which Clarence F. Green then executed and delivered to *Whalen* was a first-mortgage incumbrance, it appearing that Green had forged satisfactions of the prior incumbrances, and that in truth and in fact said tract No. 1 was on January 16, 1919, subject to five prior mortgages to secure loans aggregating $7,500, none of which had been paid or satisfied, but in relation to which forged releases had been recorded.   That the value of tract No. 1 was and still is wholly inadequate security for all of the indebtedness which was to be secured by said prior mortgages.

That on April 26, 1919, without the knowledge of Gunderson or Pammesberger, Clarence F. Green obtained $2,200 on a loan from *W. A. Marling* and *Celia E. Marling,* trustees, and as security therefor executed a mortgage upon another parcel of real estate which we shall designate as tract No. 2, which Green falsely and fraudulently represented to be unincumbered, which at that time it appeared to be by reason of forged releases of prior mortgages which Green had caused to be executed and recorded.   That the trustees in good faith relied upon the false representations made by Green and upon the records or releases and were induced thereby to make a loan of $2,200.   That the said

sum was obtained by Green from the trustees under such circumstances as to entitle the trustees to immediate recovery from Green of the sum of $2,200.

That on April 26, 1919, $2,000 of the $2,200 fraudulently obtained by Green from the *Marlings,* together with the interest accrued on the note to Pammesberger, were paid by Green to Gunderson as attorney for Pammesberger in satisfaction and discharge of the latter's note and mortgage by Green then delivering to Gunderson a cashier's check for $2,000 issued by the First National Bank of Madison, payable to the order of Green and indorsed by him; that Gunderson then, in good faith and without any knowledge or notice of any defect in the title of Green, accepted said cashier's check, in the usual course of business, in payment of said note for $2,000, which was then held and owned by Pammesberger, and thereby became a holder in due course of said cashier's check, on behalf of Pammesberger. That at said time Green informed Gunderson that he did not desire a written satisfaction of the mortgage executed by Pammesberger; that up to said time and thereafter and until shortly before May 23, 1919, Pammesberger had been unable to find the note and mortgage.

That on April 26, 1919, Gunderson deposited said cashier's check for $2,000, paid to him on said day by Green, as aforesaid, at the Merchants & Savings Bank at Madison, and received a certificate of deposit for $2,000, payable to the order of Gunderson.

That on May 1st an arrangement was entered into between Pammesberger and Gunderson. Gunderson indorsed the certificate for $2,000 to Pammesberger, but continued to retain the certificate in his custody. That shortly prior to May 23, 1919, Pammesberger found the missing note and mortgage and so informed Gunderson, but did not immediately present the same to Gunderson or request him to deliver the certificate of deposit. That on May 22d and May 23d Gunderson and Pammesberger were advised by *Whalen* that he, *Whalen,* claimed an interest in the said deposit of $2,000, and on May 23, 1919, Gunderson was in-

formed by the defendants *Harper* and *Schumacher* that they
each claimed that they were entitled to the application of
the certificate of deposit in satisfaction of William Pammes-
berger's note and mortgage, and request was then made by
*Schumacher* of Pammesberger that he immediately execute
and deliver to Gunderson, for the benefit of all subsequent
mortgagees, a written satisfaction of the said mortgage to
William Pammesberger. That on May 23, 1919, before
the service of any papers in this action, Pammesberger
executed and delivered to Gunderson a written satisfaction
of the mortgage. That thereafter the satisfaction of mort-
gage, together with the note and certificate of deposit for
$2,000, were left in the hands of Gunderson subject to such
disposition as might be made thereof in an action which it
was then believed was about to be commenced. Pammes-
berger receipted in writing for the certificate of deposit,
and all documents were left with and ever since have been
in the custody of Gunderson.

That up to and including May 23, 1919, neither Gunder-
son nor Pammesberger had any knowledge or notice of any
defect in the title of Green to the fund represented by the
cashier's check for $2,000.

That until May 23, 1919, the Northwestern Securities
Company, *W. G. Schumacher, J. C. Harper,* and *Whalen*
had no knowledge or information as to Clarence F. Green's
payment on April 26, 1919, of the note for $2,000 then held
by William Pammesberger, and that none of the defendants
nor the plaintiff did any act or in any manner changed his
status in relation to said mortgage and to the real estate
known as tract No. 1, by reason of said payment having
been made on April 26, 1919.

That said *Whalen* never had any interest in the $2,000
paid to Gunderson on April 26, 1919. That throughout all
the transactions involved in the action the defendant L. C.
Gunderson, Ingeborg Thompson, as well as all of the other
parties to this action with the exception of Clarence F.
Green, acted honestly and in good faith. Neither L. C.

Gunderson nor any of those parties with the exception of Clarence F. Green has been guilty of any fraudulent misrepresentation, concealment, or deceit, none of them have acted in collusion in any respect for any wrongful or unlawful purpose ·in connection with Clarence F. Green, or any other person, and none of them are either directly or indirectly responsible for any of the frauds or misconduct committed by the defendant Clarence F. Green.

Upon the points material here the court concluded as a matter of law "that the certificate of deposit issued by the Merchants & Savings Bank of Madison, Wisconsin, under date of April 26, 1919, for $2,000, ·payable to the order of L. C. Gunderson and indorsed by him to the order of William Pammesberger, is the absolute property of William Pammesberger and none of the other parties herein have any right or interest therein," and dissolved the injunction. Further, "that the satisfaction of mortgage which is recorded in Volume 239 of Mortgages on page 240 in the office of the register of deeds for Dane county, and which purports to have been executed by William Pammesberger, ·is null and void and should be canceled of record. That the satisfaction of said mortgage by William Pammesberger, which he executed and delivered into· the custody of L. C. Gunderson under date of May 23, 1919, should be canceled and adjudged null and void and delivered to the clerk of this court and by him canceled. That the indebtedness of $2,000 and interest, which is secured by said mortgage to William Pammesberger, shall be revived and constitute a valid and existing obligation solely as against the defendant Clarence F. Green, for the benefit of the defendants *W. A. Marling* and *Celia Marling,* as trustees of the estate of George W. Marling, so far as necessary to support the lien of said mortgage to William Pammesberger, and that said mortgage to William Pammesberger, which mortgaged tract No. 1, shall be a valid and existing lien for the payment of said indebtedness of $2,000, with in-

terest thereon at the rate of six per cent. payable semi-annually from April 26, 1919, in favor of the defendants *Marling,* and they are entitled to be subrogated to the rights of said William Pammesberger as to said mortgage, and for that purpose said William Pammesberger shall assign said mortgage and the note secured thereby to said *W. A. Marling* and *Celia Marling,* as such trustees. That the $800 mortgage from Clarence F. Green to L. C. Gunderson, recorded in Volume 242 on page 386, be adjudged to be fully satisfied and discharged."

From judgment entered accordingly the defendants *Schumacher* and *Harper* appeal.

For the appellant *Schumacher* there were briefs by *Kroncke, Sauthoff & Murphy,* attorneys, and *H. H. Puetz,* of counsel, all of Madison, and oral argument by *Mr. George Kroncke* and *Mr. Puetz.*

*J. C. Harper* of Madison, *in pro. per.*

For the respondents *Marling* there was a brief by *Olin, Butler, Thomas, Stebbins & Stroud* of Madison, and oral argument by *Byron H. Stebbins.*

ROSENBERRY, J. The appealing defendants do not in any respect assail the findings of fact made by the trial court, but contend that the court erred in its conclusions of law in applying the doctrine of subrogation to the findings of fact. The appealing defendants argue that subrogation is not for strangers; that the payment of the money by Green to Gunderson, who received it as attorney for Pammesberger, discharged the Pammesberger debt and extinguished the mortgage; that the equities of the various parties are equal and in that situation the law should prevail; and in a reply brief argue that the equities of the appealing defendants are superior to those of the respondents *Marling.*

We are convinced that if the rights of the respondents *Marling* depend upon the law of subrogation, the appealing defendants must prevail. The *Marlings* had no interest in

tract No. 1 and could not have been obliged or compelled to pay the debt secured by the Pammesberger mortgage. Although Green obtained the fund from the *Marlings* by fraudulent representations, there was no understanding or agreement between Green and the respondents *Marling* that the money should be used to discharge any particular obligation of Green's, much less the Pammesberger mortgage. Nor were the respondents *Marling* ever to secure any lien upon the property covered by the Pammesberger mortgage. The respondents *Marling* accepted as their sole security the mortgage upon tract No. 2 without inquiry as to what use or disposition was to be made of the fund. This position is fully sustained by the authorities. *Murphy v. Baldwin,* 159 Wis. 567, 150 N. W. 957; *Watson v. Wilcox,* 39 Wis. 643; *Ætna L. Ins. Co. v. Middleport,* 124 U. S. 534, 8 Sup. Ct. 625; *Acer v. Hotchkiss,* 97 N. Y. 395.

The respondents *Marling* seek to sustain the judgment by the application of principles of law relating to constructive trusts. Their argument is that Green's fraud in obtaining the money of respondents *Marling* made him a constructive trustee thereof, impressed it with a trust in their favor, and gave them the right to follow it into and reclaim it out of the Pammesberger mortgage which it was used to pay, since there are no intervening rights or equities on the part of appellants *Schumacher* and *Harper,* or any one else. The principle is firmly established that one from whom money has been obtained by fraud may follow and reclaim it, or have a trust imposed upon property into which it has gone, so long as it can be distinctly traced and identified, and provided that no injustice is done to one who stands in the position of a purchaser for value without notice. 39 Cyc. 528, 533, 545, 546; 26 Ruling Case Law, 1232, 1348, 1351; *Bent v. Barnes,* 90 Wis. 631, 64 N. W. 428; *Wisdom v. Wisdom,* 155 Wis. 434, 145 N. W. 126; *Emigh v. Earling,* 134 Wis. 565, 115 N. W. 128; *Boyle v. Northwest-*

*ern Nat. Bank,* 125 Wis. 498, 103 N. W. 1123, 104 N. W. 917; *Hyland v. Roe,* 111 Wis. 361, 87 N. W. 252; 3 Pomeroy, Eq. Jur. (4th ed.) § 1053.

That Green obtained the $2,000 in question under such circumstances as to make him a constructive trustee thereof and to entitle the respondents *Marling,* from whom he obtained it, to reclaim it or to follow it, seems too clear to admit of argument. The appellants contend that by the payment of the debt owing by Gunderson to Pammesberger, to secure which the mortgage was given, the mortgage lien was destroyed, or at least merged in the estate of Green, the owner of the property, and hence was in his hands a nullity; that this having occurred, the rights of the subsequent mortgagees attached, and that the obligation so extinguished by payment cannot be revived so as to deprive them of their rights thus acquired, citing *Rice v. Winters,* 45 Neb. 517, 63 N. W. 830. In *Rice v. Winters* we find no fact alleged in the complaint or found by the court from which it may be inferred that the party asserting a right of subrogation was defrauded, neither was there any right asserted to follow the fund under the doctrine of constructive trusts. While *Watson v. Wilcox,* 39 Wis. 643, is there cited to the proposition that the doctrine of subrogation would not be applied where one having no interest to protect voluntarily loans money to a mortgagor for the purpose of satisfying and canceling the mortgage, taking a new mortgage for his own security, nevertheless, as we understand the cases of *Charmley v. Charmley,* 125 Wis. 297, 103 N. W. 1106, and *Poluckie v. Wegenke,* 137 Wis. 433, 119 N. W. 188, this court would have held under the facts in *Rice v. Winters* that the party claiming the right of subrogation was entitled thereto, although the Nebraska court held the contrary. *Hughes v. Thomas,* 131 Wis. 315, 111 N. W. 474; *Wilton v. Mayberry,* 75 Wis. 191, 43 N. W. 901. So that if it were applicable to the present

situation, as it is not, we could not apply the reasoning of the court in *Rice v. Winters* in the determination of the issue here presented.

Disregarding the void satisfactions and regarding the facts as they actually existed on the 26th day of April, 1919, there was upon tract No. 1 the Pammesberger mortgage, which was a first mortgage, the Northwestern Securities Company mortgage, which was a second mortgage, the *Schumacher* mortgage, which was a third mortgage, the *Harper* mortgage, which was a fourth mortgage, and the *Whalen* mortgage, which was a fifth mortgage. We treat the mortgage given by Green to Gunderson as paid and discharged, as found by the trial court. Green was the owner of the fee. With the title in this situation, he procures from the respondents *Marling* by fraud and misrepresentation the sum of $2,000, which is traced directly into the hands of Gunderson, where it is paid for the satisfaction of the Pammesberger mortgage. This fund was one which the respondents *Marling* were entitled to follow into the hands of any person to whom it should come who had notice, or into any property into which it might be traced, purchased, or procured by Green. To present the facts more graphically it may be said that tract No. 1 was cut up into interests: a $2,000 interest which secured the payment to Pammesberger of the amount loaned by him to Gunderson; a $1,600 interest which secured the payment of the amount loaned to Green by the Northwestern Securities Company; a $1,300 interest which secured the payment of $1,300 loaned to Green by *Schumacher;* an $1,800 interest which secured the payment of the amount loaned by *Harper* to Green; and a $2,000 interest which secured the loan made by *Whalen* to Green. Pursuant to the agreement contained in his deed, Green paid Gunderson's debt to Pammesberger. By that payment Green's liability to Gunderson was discharged and the $2,000 interest in tract No. 1, which secured the payment of Gunderson's debt to Pammesberger, was

released.   The trial court said that this $2,000 interest so released should stand as security for the benefit of the respondents *Marling,* who had fraudulently been deprived of the money which secured the release, and that such mortgage interest should be revived and constitute a valid and existing obligation solely against the defendant Clarence F. Green for the benefit of the respondents *Marling.*   The interest of every subsequent mortgagee remained exactly as it was before the money of the respondent mortgagees had been used to satisfy the debt secured by the Pammesberger mortgage.   No subsequent incumbrancer has in any degree or to any extent changed his position by reason of such payment nor is he in any worse position than he would have been had the payment not been made.   It is true, as argued, that upon the payment of the debt owing by Gunderson to Pammesberger, which was secured by the $2,000 interest in the property, in the absence of countervailing equities the second mortgage would have become a first mortgage and each subsequent mortgage would have moved up one place.   Have such subsequent incumbrancers equities superior to those of the respondents *Marling,* who, by fraud, were induced to furnish the money which procured the release?   We think not.   That which Green purchased with the money so fraudulently procured, the release of the $2,000 interest represented by the Pammesberger mortgage, should in equity stand as security for the payment of the *Marlings,* who furnished the fund.   The subsequent incumbrancers do not stand in the position of a purchaser for value without notice.   They have parted with nothing, they have not changed their position, their rights, equitable and legal, remain exactly as they were before the payment was made.   The principle contended for by the subsequent incumbrancers would, if applied, entirely defeat the right of subrogation in most cases, for if in every instance where there was a satisfaction of a prior lien all subsequent incumbrancers could assert a vested right in the

benefits thereby accruing to them, no relief could be granted to the person claiming the right of subrogation in most cases. We see no reason why the principle applicable in subrogation is not applicable here, and that therefore the interest which was released by the payment of the Pammesberger mortgage must stand charged for the benefit of those from whom Green fraudulently procured the fund.

In this case innocent parties must suffer. The burden of wrongdoing falls upon those who have done no wrong, which is not infrequently the case. The parties are in a court of equity. Their rights must be determined in accordance with established equitable principles. If the doctrine of constructive trusts, which is well established in our law, is to be given any effect whatever, we see no reason why that which was procured by Green by means of the proceeds derived from his fraud should not stand for the benefit of those who furnished the fund which procured it. The judgment of the trial court is right and must be affirmed.

*By the Court.*—So ordered.