552

BANK OF BARABOO, Appellant, vs. PROTHERO and others, Respondents.

WELCH, Respondent, vs. BANK OF BARABOO, Appellant.

*May 9—June 5, 1934.*

For the appellant Bank of Baraboo there were briefs by *Grotophorst, Quale & Langer* of Baraboo, and oral argument by *Norman Quale.*

For the respondents there was a brief by *Hill, Miller & Hill* of Baraboo, and oral argument by *James H. Hill.*

WICKHEM, J. The principal question upon this appeal relates to the priority of the mechanic's lien of respondent Welch to a mortgage of $16,000 held by the appellant bank. A consideration of this question requires a statement of the facts.

Defendants Prothero and McGinnis were partners in the garage business in the city of Baraboo. The partnership purchased a garage building from N. H. Smith on September 19, 1914, and executed to Smith a mortgage of $9,500 upon this property as security for the balance of the purchase-price. One Simonds later became a member of the partnership, but eventually sold his interest to defendant Dwyer, who became a member of the firm in 1926. On November 4,

1929, the partnership sold the south half of the property for $9,000, and Smith released this property from the purchase-money mortgage and on the same date took back a mortgage executed by the partnership for $10,000 on the north half of the property. This property is involved in the present foreclosure. At the same time defendant Dwyer mortgaged his undivided one-third interest in this property as security for a loan of $3,500 owing by him to the appellant bank. This mortgage was subject to the Smith mortgage. The partnership proposed to remodel the property involved, and work was begun on May 1, 1930. On or before this date respondent entered into an oral contract with the partnership, whereby he agreed to furnish the material and install the plumbing and heating upon the premises involved in this foreclosure. In pursuance of this contract, and between the dates of May 1, 1930, and February 14, 1931, respondent furnished the materials and labor contracted for and fully performed his contract. On November 24, 1930, and for sometime prior thereto, the partnership was indebted to the appellant bank on several unsecured notes in the sum of $5,963.67. The partnership had expected to receive financial assistance from Smith, the mortgagee, as it was contemplated that the improvements would require more than the $9,000 received upon the sale of the south half of the property. In the fall of 1930 the partnership applied to the appellant bank for assistance in refinancing and building operations, Smith having failed to come to their assistance. On November 24, 1930, the appellant bank agreed to advance to the partnership $3,500 to be secured by an assignment of accounts receivable. An arrangement was also entered into whereby the bank was to advance to the partnership a sum sufficient to pay off the Smith mortgage of $10,000 in full. In consideration the bank was to receive a first mortgage upon the premises for $16,000, the balance of this sum over and above that necessary to retire the Smith mortgage being

to secure the notes amounting to nearly $6,000 then owing to the bank and unsecured. As a result of this transaction the Smith mortgage was released and discharged of record on November 24, 1930.

It is contended by the appellant that under these circumstances the bank is entitled, at least to the extent of the sums advanced to pay the first mortgage, to be subrogated to the rights of the first mortgagee Smith. Unless the bank is entitled to subrogation, the lien of respondent is superior to that of the bank, since the contract of Welch and the work under this contract was commenced before the mortgage to the bank was given. It was the contention of respondent, and evidently the position of the trial court, that this case is ruled by *Watson v. Wilcox,* 39 Wis. 643, and *Hughes v. Thomas,* 131 Wis. 315, 111 N. W. 474.

It is the contention of respondent that the bank was a volunteer; that it had no connection with the property other than a second mortgage upon Dwyer's interest in the property. On the other hand, it is the contention of the bank that this second mortgage gave it an interest in the property, and that its interest in getting security for its unsecured debts against the partnership takes it out of the class of volunteers. This requires a consideration of several cases in Wisconsin that have dealt with the doctrine of subrogation.

In the case of *Downer v. Miller,* 15 Wis. *612, it was held:

"We know of no case that has ever carried the doctrine of subrogation so far as to hold that a mere loan of money, for the purpose of enabling the borrower to pay a debt, entitled the lender to be subrogated to the rights of the creditor whose debt was thus paid."

In *Blodgett v. Hitt,* 29 Wis. 169, the defendant purchased land in good faith at an administrator's sale, without notice of defects in the proceedings rendering the sale void. The moneys paid were used in part to discharge a mortgage upon

the land. It was held that the defendant was entitled to be subrogated to the rights of the mortgagee. In this case the rule seems to be put upon principles of natural justice.

In *Watson v. Wilcox*, 39 Wis. 643, one Harvey and his wife were in possession and claimed title to certain premises. While in possession Harvey and his wife mortgaged them to one Hodson. Later, the Harveys being unable to pay the mortgage, Hodson applied to plaintiff to purchase it. Instead of making an assignment of the mortgage, it was suggested that it would be better to have the mortgage canceled and to take a new mortgage from the Harveys. This was done. Subsequent developments made it essential that plaintiff be subrogated to the Hodson mortgage in order to preserve his security. It was held that the plaintiff was not entitled to be subrogated, because before he took his own mortgage he was a stranger to the title and had no connection with the mortgage debt. The rule is stated there that if a person, standing in the relation of surety, pays a debt or is compelled to pay it to protect his rights, he is entitled to be subrogated without any agreement to that effect, and that in other cases the demand of a creditor which is paid with the money of a third person, and without any agreement that the security shall be assigned or kept alive for the benefit of such third person, is extinguished.

In *Levy v. Martin*, 48 Wis. 198, 4 N. W. 35, plaintiff advanced money upon the request of executors to pay off a mortgage on lands of the estate, and took as security a mortgage on the same lands by the executors in pursuance of a license of the county court which was held to be invalid. It was held that the plaintiff was entitled to subrogation. It is stated in the opinion that there was no evidence of an express agreement that the mortgage to which plaintiff claims to be subrogated was to be assigned or kept alive for plaintiff's benefit, but that it was a fair inference that the plaintiff

expected that this would be the situation. The court, however, held that independently of any agreement, and upon principles of natural justice and equity, the plaintiff was entitled to subrogation. Plaintiff was held not to be a volunteer, since he loaned his money at the solicitation of the executors and for the benefit of the estate. The court distinguishes the *Watson Case* on the ground that the plaintiff in the *Watson Case* was a volunteer. Evidently this is based on the fact that the plaintiff in the *Watson Case* was a purchaser of the first mortgage and acted upon the request of the owner of that mortgage and not upon the request of the borrower.

In *Wilton v. Mayberry,* 75 Wis. 191, 43 N. W. 901, plaintiff loaned Mayberry a sum of money for the purpose of paying off a note and mortgage owed by Mayberry and his wife, with the agreement that Mayberry should execute to the respondent a new mortgage on the same land to secure the loan. The court held plaintiff entitled to be subrogated. The *Watson* and *Downer Cases* are distinguished upon the grounds that these cases related to mere loans of money without any agreement that the security be kept alive for the benefit of the lender. The court stresses the fact that the plaintiff in this case was to have equal security on the land with that which his advances discharged.

In *Hughes v. Thomas,* 131 Wis. 315, 111 N. W. 474, one Thomas and his wife executed a note and mortgage to one Williams. Thomas died leaving a will. By the terms of the will the widow was given a life estate with remainder to others. The mortgage coming due during the lifetime of the widow, and the mortgagee pressing for payment, the widow solicited a loan to pay this note and mortgage, and offered a first mortgage to the plaintiff, who made the loan. Due to the fact that the widow had only a life estate, it was essential to Hughes' interests that he be subrogated to the rights of

the original mortgagee. It was held that plaintiff was entitled to be so subrogated. The court said:

". . . where the security given for the loan which is used to pay off an incumbrance turns out to be void, although the party taking it expected to get good security, he will be subrogated to the rights of the holder of the lien which the money advanced is used to pay, and that in such case the party advancing the money cannot be regarded as a stranger or volunteer."

The *Watson Case* is again differentiated on the ground that the plaintiff there was a volunteer and got what he bargained for.

In *Murphy v. Baldwin*, 159 Wis. 567, 150 N. W. 957, plaintiff, who advanced money to pay a prior mortgage but without any agreement for security, was held not to be entitled to subrogation. The *Downer* and *Watson Cases* are approved and followed. The court said:

"Had the plaintiff been obliged to pay the mortgages to protect some lien of his own on the mortgaged property, or had the debtor agreed to give security on the mortgaged property, or had the plaintiff been a surety for the payment of the mortgage debt, then the right of subrogation would follow."

The case of *Hughes v. Thomas, supra,* is distinguished upon the ground that there was there an agreement to give security.

A review of these cases indicates that a volunteer is not entitled to be subrogated, even though his advance discharges a mortgage and was intended to be applied to that purpose, and that the right of a party to subrogation, by reason of advances made to a debtor, depends upon (1) his being secondarily liable; or (2) the necessity for acting to protect his own interests; or (3) an agreement that he is to have security. In this case the bank was not a surety, but it advanced the money under a definite agreement that plaintiff have

security in the form of a first mortgage, and is within the doctrine of the cases which give subrogation. It is consequently unnecessary to determine whether its interest in securing the notes of the partnership gave it such an interest to protect as would entitle it to subrogation. The only case which offers any difficulty in reaching this result is the *Watson Case,* and that case is distinguishable upon the ground that there the plaintiff was in fact purchasing the mortgage from the owner of it, rather than lending merely to the mortgagor with an agreement for security. The conclusion is inevitable that appellant is entitled to be subrogated to the rights of Smith, the holder of the first mortgage, to the extent that the advances were used to discharge the Smith mortgage.

Respondent claims that Smith had agreed to finance this transaction; that if appellant is to be subrogated to Smith's rights it must be subject to Smith's obligations. It is unnecessary to determine the legal merits of this contention for the reason that there is no evidence upon which to sustain the conclusion that Smith had entered into any binding agreement to finance the partnership, or if he did, what the terms and extent of this arrangement were.

It is further contended by respondent that the doctrine of subrogation can have no application where the rights of a third party have intervened. However true this may be, it has no applicability here. The Smith mortgage was existent at the time when the repairs were undertaken, and is prior to respondent's lien. Respondent's rights cannot be said to have intervened in such a way as to render it inequitable to grant subrogation to the extent that we hold it proper to grant this relief.

Appellant contends that respondent did not furnish materials and labor under an entire or continuous contract, and that the finding of the trial court that on or about May 1,

1930, respondent entered into an oral contract to furnish the material and install the plumbing and heating at the reasonable value thereof is unsupported by the evidence. It is our conclusion that the contention is unsound. Respondent was asked whether, between the first of May and the 14th of February, at the instance of the partnership, he furnished the labor and material in question under contract. He stated that he did, and that this contract included the installation of the heating and plumbing in the building under foreclosure. The evidence clearly sustains the finding of the trial court. Further than this, respondent could so apply the payments on account as to leave only the more recent charges for labor and material unpaid, and in this situation there could be no question of the timeliness of his proceedings to perfect his lien or his right to a lien. *North v. La Flesh,* 73 Wis. 520, 41 N. W. 633; *Coxe Bros. & Co. v. Milbrath,* 110 Wis. 499, 86 N. W. 174; *W. H. Pipkorn Co. v. Evangelical L. St. Jacobi Society,* 144 Wis. 501, 129 N. W. 516.

*By the Court.*—The portions of the judgments appealed from are reversed, and the causes remanded with directions to enter judgments in accordance with this opinion, appellant to tax but one bill of costs.