DAIRYMAN'S STATE BANK, Appellant, v. TESSMAN, Respondent.

*March 8—April 3, 1962.*

316

For the appellant there was a brief by *Rogers & Owens* of Portage, and oral argument by *Harlan B. Rogers*.

For the respondent there was a brief by *Lueck & Skupniewitz* of Beaver Dam, and oral argument by *A. W. Lueck*.

CURRIE, J.    Counsel for plaintiff bank contends that the facts of the complaint are sufficient to state a cause of action on any one of three theories, viz.:

(1) Restitution of money had and received,

(2) Subrogation,

(3) Equitable lien.

### Restitution.

The right to recover for money had and received, while an action at law, is governed by equitable principles. *Trempealeau County v. State* (1952), 260 Wis. 602, 605, 51 N. W. (2d) 499. It can be sustained only if the defendant

has received money which in equity and good conscience he ought to repay to the plaintiff. *Conrad v. Evans* (1955), 269 Wis. 387, 392, 69 N. W. (2d) 478; *Federal Corp. v. Radtke* (1938), 229 Wis. 231, 237, 281 N. W. 921; 58 C. J. S., Money Received, p. 906, sec. 1.

However, where a holder in due course of a negotiable instrument receives money payable by such instrument he is not required to repay the proceeds realized thereon to the maker or drawer. This principle is recognized in Restatement, Restitution, p. 52, sec. 13 (a), which states:

"BONA FIDE PURCHASER. A person who has entered into a transaction with another under such circumstances that, because of a mistake, he would be entitled to restitution from the other,

"(a) is not entitled to restitution from a third person who has received title to or a legal interest in the subject matter either from the other or from the transferor at the direction of the other, and has given value therefor without notice of the circumstances:"

It appears from comment *a* to this section that the words "because of a mistake" include situations where the transfer was induced by fraud. Professors Seavey and Scott, in their Reporters' Notes to Restatement, Restitution, p. 8, make this comment with reference to sec. 13:

"The general principle of *bona fide* purchase, of course, needs no citations for its support. The situations dealt with in sec. 13, where the transferee of a negotiable instrument or one who takes from a *fraudulent* person obtains a title, are those to which the principle ordinarily applies and the problems in those cases all depend upon the question as to whether or not the person having the subject matter has acquired title without notice and has paid value therefor." (Emphasis supplied.)

There is a conflict of authority as to whether a payee of a note or check can be a holder in due course under the

Negotiable Instruments Law (hereinafter the "N. I. L.").[1] The view that the payee may be a holder in due course was announced in *Liberty Trust Co. v. Tilton* (1914), 217 Mass. 462, 105 N. E. 605, L. R. A. 1915B, 144. Wisconsin is committed to the rule that a payee may be a holder in due course. *Farmers Life Ins. Asso. v. Houghton* (1932), 207 Wis. 357, 241 N. W. 352. Among the great commercial states, in addition to Massachusetts, which adhere to this view are Illinois, New York, and Pennsylvania.[2]

Beutel's, Brannan, Negotiable Instruments Law (7th ed.), p. 675, states that there can be no doubt that a proper interpretation of the N. I. L., read as a whole, leads to the conclusion that a payee may be a holder in due course under any circumstance in which he meets the requirements of sec. 52 of the act (sec. 116.57, Wis. Stats.).[3]

Sub. (4) of sec. 116.57, Wis. Stats., uses the phrase "negotiated to him," and under sec. 30 of the N. I. L. (sec. 116.35, Wis. Stats.), an instrument is negotiated

---

[1] Annotations: 15 A. L. R. 437; 21 A. L. R. 1365; 26 A. L. R. 769; 32 A. L. R. 289; 68 A. L. R. 962; 97 A. L. R. 1215; 142 A. L. R. 489.

[2] *Drumm Construction Co. v. Forbes* (1922), 305 Ill. 303, 137 N. E. 225, 26 A. L. R. 764; *Bergstrom v. Ritz-Carlton Restaurant & Hotel Co.* (1916), 171 App. Div. 776, 157 N. Y. Supp. 959, appeal dismissed (1917), 220 N. Y. 569, 115 N. E. 1033; *Johnston v. Knipe* (1918), 260 Pa. 504, 105 Atl. 705, L. R. A. 1918E, 1042.

[3] Sec. 116.57, Wis. Stats., provides: ·

"A holder in due course is a holder who has taken the instrument under the following conditions:

"(1) That it is complete and regular upon its face;

"(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"(3) That he took it in good faith and for value.

"(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.

"(5) That he took it in the usual course of business."

"when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof." Thus, under Professor Brannan's view of a fact situation such as that alleged in the instant complaint, Schwoch and not the drawer bank is the person who "negotiates" the instrument to the payee. Ibid., page 676. Therefore, it is the nature of the transfer from Schwoch to Tessman which is determinative.

The other pertinent requirements of sec. 116.57, Wis. Stats., in so far as the instant appeal is concerned, are that Tessman took the bank's $8,000 check in the ordinary course of business, in good faith, for value, and that, at the time it was negotiated to him by Schwoch, Tessman had no notice of any infirmity in the instrument or defect in the title of Schwoch. Under the allegations of the complaint, it is clear that Tessman paid value for the check. This is because Schwoch was then indebted to him for the $16,250 purchase price of the personalty, and, therefore, the $8,000 was a partial payment of the indebtedness. This constituted value under sec. 25 of the N. I. L. (sec. 116.30, Wis. Stats.). It is a matter of common knowledge that in ordinary business practice people frequently pay debts or purchase property with bank checks or drafts made directly payable to the creditor or seller. From this it necessarily follows that Tessman took the instant check "in the usual course of business" within the meaning of sub. (5) of sec. 116.57, Wis. Stats.[4] Thus, whether Tessman took as a holder in due course must necessarily depend on whether he took in good faith without notice of any defect in Schwoch's title.

Sec. 116.60, Wis. Stats., provides in part as follows:

"The title of a person who negotiates an instrument is defective within the meaning of chapters 116 to 118 when he

[4] Sub. (5) of sec. 116.57 is not found in sec. 52 of the N. I. L., and there is no comparable provision anywhere in the N. I. L. See 18 W. S. A., p. 183.

obtains the instrument, or any signature thereto, by fraud, duress, or force or fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud . . ."

Therefore, Schwoch's title was defective on two grounds: (1) He obtained the check as a result of his own fraudulent and false representations; and (2) he negotiated it to Tessman contrary to the condition imposed by the bank that he secure a bill of sale from Tessman. However, the fact that there had been only a conditional delivery of the check by the bank to Schwoch, and that he negotiated it contrary to such condition, would not in itself prevent Tessman from obtaining title if he qualifies as a holder in due course. Sec. 116.20, Wis. Stats.; Beutel's, Brannan, Negotiable Instruments (7th ed.), p. 360 *et seq.* Sec. 116.64, Wis. Stats., provides that, "Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove" that he, or the person under whom he claims, acquired title as a holder in due course. The *instant complaint* alleges facts which establish Schwoch's defective title, and is silent as to whether Tessman had notice of such facts. Thus, because of sec. 116.64, Wis. Stats., there is no presumption that Tessman was a holder in due course, and the burden is on him to prove that he was. Therefore, it is incumbent upon Tessman to answer and allege as an affirmative defense that he was a holder in due course.

It is apparent that plaintiff bank's cause of action for money had and received will rise or fall on the determination of whether Tessman was a holder in due course of the $8,000 check. If it is found that he was not a holder in due course, it will be because, at the time he accepted and cashed the check, he had notice of Schwoch's fraud or of the violation by Schwoch of the condition under which the bank delivered the check to him. If Tessman had such notice,

then in equity and good conscience he should be required to repay to the bank the $8,000 which he realized upon the check. However, if he is found to be a holder in due course, this will immunize him from liability on a cause of action for restitution grounded on unjust enrichment.

It is our conclusion that the complaint states a good cause of action for money had and received because the allegations of Schwoch's fraud and violation by him of the terms of the conditional delivery have rebutted the presumption that Tessman was a holder in due course of the check. Therefore, a demurrer cannot be resorted to in order to defeat this cause of action because the burden has been cast upon Tessman to plead affirmatively such facts as he deems sufficient to establish he was a holder in due course.

## Doctrine of Subrogation.

Plaintiff bank maintains that the facts stated in its complaint require that it be subrogated to the rights of Tessman as they existed at the time he received and cashed the $8,000 check. At that time Tessman held legal title to the farm personalty, subject to Schwoch's rights under the contract to purchase. If the bank were subrogated to Tessman's rights, it would be placed in his shoes, in so far as necessary for the recovery of its $8,000 together with interest, with respect to his right to claim the $10,224.42 escrow fund.

Subrogation is an equitable doctrine invoked to avoid unjust enrichment. *Kennedy-Ingalls Corp. v. Meissner* (1958), 5 Wis. (2d) 100, 92 N. W. (2d) 247; *Home Owners' Loan Corp. v. Papara* (1942), 241 Wis. 112, 3 N. W. (2d) 730; Restatement, Restitution, p. 653, sec. 162. We have already dealt with the issue of unjust enrichment in passing on the question of whether the complaint states a cause of action for money had and received. Without a finding of unjust enrichment there is no basis afforded for invoking subrogation. If unjust enrichment of Tessman is

found to have occurred, then there is no necessity for resorting to subrogation because plaintiff bank then will be entitled to a direct judgment against Tessman for $8,000 and interest.

However, even if the complaint had failed to state a cause of action for money had and received, we are satisfied that it is insufficient to state a cause of action for subrogation against Tessman. Plaintiff bank relies upon Restatement, Restitution, p. 173, sec. 43 (3), which reads:

"(3) Where a person lends money to another who contracts to use the money for the discharge of a lien upon property which the other represents as belonging to him and where the money so lent is used for the discharge of such lien, the lender is entitled to have the lien reinstated for his benefit if, unknown to him, the property was not owned by the other or was subject to a junior lien."

Typical examples of Wisconsin cases which have applied the aforequoted principle are *Bank of Baraboo v. Prothero* (1934), 215 Wis. 552, 255 N. W. 126, and *Whalen v. Marling* (1922), 176 Wis. 441, 187 N. W. 169. In both cases, the party granted subrogation was not given such remedy as a protection against the lienholder whose lien had been paid by the funds advanced, but against other persons whose rights were junior to the discharged lien. Here, if Tessman is considered to have had a vendor's lien, instead of absolute title to the farm personalty Schwoch had agreed to purchase, the placing of the bank in Tessman's shoes by invoking subrogation would defeat Tessman's own claim to the escrow fund. We are of the opinion that application of the principle stated in Restatement, Restitution, sec. 43 (3), does not permit this to be done. Its application might subrogate the bank to the remaining original lien rights of Tessman to the escrow fund after Tessman's prior right thereto has been satisfied. However, such right of subrogation would have to be asserted against the adminis-

trators of the Schwoch estate, not Tessman, and such administrators are not parties to this action.

It may well be that the bank has a right of subrogation to the interest of the Schwoch estate in the escrow fund by reason of the administrators' disaffirmance of the purchase agreement. However, in order to assert this claim of subrogation, the administrators would have to be made parties defendant, which was not done.

For the reasons stated we conclude that the complaint fails to state a cause of action for subrogation as against Tessman.

## Equitable Lien.

Plaintiff bank, in support of its contention that the complaint states a cause of action for an equitable lien against the $10,224.42 escrow fund, which has priority over any right thereto of Tessman, cites Restatement, Restitution, p. 650, sec. 161, which reads:

"Where property of one person can by a proceeding in equity be reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched, an equitable lien arises."

Comment b, ibid., page 651, states that where the equitable lien is on a fund represented by a bank deposit it is enforced by a direction to pay the claimant out of the fund. However, here the administrators of the Schwoch estate are also claimants to the escrow fund and they are not parties to this action. Therefore, the court would be without power to adjudicate that plaintiff bank be paid its claim out of the escrow fund. This is true even though it be ultimately determined that Tessman was not a holder in due course of the $8,000 check and, therefore, had been unjustly enriched at the expense of the bank. The most that could be granted the bank by way of relief against the escrow fund would be to impress a lien upon Tessman's interest therein.

As we view it, a separate and independent cause of action in plaintiff bank for an equitable lien does not exist, but equitable lien may afford part of the remedy to be applied in the event the bank prevails on its cause of action for money had and received.

*By the Court.*—Order reversed, and cause remanded with directions to enter an order overruling the demurrer.